## JACKSON & SHARP CO. v. PEARSON.

## PEARSON v. LOUISVILLE SOUTHERN R. CO.

### (Circuit Court, D. Kentucky. May 31, 1892.)

**1. FEDERAL COURTS—JURISDICTION—CHOSE IN ACTION.**

A county subscribed for stock in a railroad company, to be paid by an issue of county bonds under an act which prescribed that the bonds, when executed, "shall be deposited with the trustee, to be held in escrow and to be delivered to the said railroad company when it shall have become entitled to the same" by compliance with the prescribed conditions upon which the subscription was made. *Held*, where the bonds were withheld by the trustee, upon compliance with the conditions, that the right of the railroad company was one "to recover the contents of a chose in action" (Act Cong. Aug. 1888), and therefore, where the railroad company and the trustee are citizens of the same state, an assignee of the company cannot sue to recover the bonds in a federal court.

**2. REMOVAL—LIS PENDENS—ASSIGNMENT.**

A trustee filed a bill of interpleader in a state court, praying an adjudication of conflicting claims upon the part of a county and a railroad company to certain bonds. The railroad company had parted with all its interest in the subject-matter before the bill was filed, to a construction company, which had not been made a party to the suit. After the bill had been filed the construction company assigned to J. & S., citizens of another state, who were subsequently made parties to the suit by amendment. *Held*, that J. & S. were not lis pendens purchasers, and therefore entitled to have the suit removed. although there was no diversity of citizenship between the parties to the original bill.

**3. SAME—CROSS BILL.**

The fact that a defendant, against whom affirmative relief was sought in the state court, files a cross bill after removal to the federal court, does not change the relation in which he stood to the suit at the time of removal, and hence it is not necessary that the cause be remanded on the ground that none but defendants can remove.

**4. SAME—CODEFENDANTS.**

Any defendant citizen of another state from that in which the suit is brought may remove the suit to the circuit court for the proper district on the ground of local prejudice, although there are codefendants who are citizens of the same state as that in which suit is brought.

At Law. Action by the Jackson & Sharp Company against Isaac Pearson, trustee, to recover possession of certain bonds of Mercer county, Ky., issued to pay a subscription by the county to the capital stock of the Louisville Southern Railroad Company, and deposited with defendant, to be held by him until certain conditions were complied with by said company. Defendant demurs to the petition.

In Equity. Suit brought in a court of the state of Kentucky by said Isaac Pearson, trustee, against said Louisville Southern Railroad Company and said Mercer county, to compel them to interplead, and have determined whether said bonds of the county in his possession should be delivered to the railroad company, or should be canceled. By an amended petition the Jackson & Sharp Company, plaintiff in the action at law above mentioned, and others, were made defendants. That company removed the cause to the circuit court of the United States on the ground of local prejudice. Mercer county and Pearson move to remand.

Richards, Weissinger & Baskin, for Jackson & Sharp Co.
Stone & Sudduth and J. C. Bell, for Pearson.
Humphrey & Davie, for Mercer County.

BARR, District Judge. The first-named case is submitted on demurrer to the petition, and the second on motion to remand to the state court. Both the demurrer and motion to remand raise the question of the jurisdiction of this court over the same matter, and will be disposed of together.

It appears from the petition in the first case, which was filed in this court October 31, 1891, that Mercer county subscribed $125,000 to the capital stock of the Louisville Southern Railroad Company, and was to pay for it by 5 per cent. coupon bonds of the county. This subscription was made upon certain named conditions, and the bonds were signed and sealed by the proper authority of the county, and deposited with a trustee, to be held by him until the conditions were complied with by the railroad company. Subsequently, the trustee considered the conditions had been sufficiently complied with to allow of the delivery of $105,000 of the bonds of the county. This was done by the trustee, with the assent of the county authorities, but $20,000 of the bonds were retained to secure a compliance with certain other conditions of the subscription. The petition alleges that the railroad company, prior to August, 1889, had fully complied with all of the conditions of the subscription, and had offered to deliver to said county the remaining stock subscribed for by said county, but the said trustee refused to deliver said bonds. The petition further alleges that said railroad company, on the ———— day of ————, 1887, assigned and transferred, for a valuable consideration, all of its right, title, and interest in and to said bonds to the Southern Contract Company, which is a Kentucky corporation, and that said contract company, for a valuable consideration,—it being at the time the owner of said $20,000 of bonds,—assigned and transferred to the Jackson & Sharp Company all of its right, title, and interest in said bonds; that said Jackson & Sharp Company is a corporation organized under the laws of the state of Delaware, and thus a citizen thereof. The petition further states that the defendant Pearson holds said bonds wrongfully, and has refused to deliver the same upon demand, and that he is a citizen and resident of the state of Kentucky; and prays for the recovery of said bonds, with the coupons attached, maturing after August, 1889, and for damages for the detention. The demurrer raises the question whether the plaintiff, as an assignee of the Southern Contract Company, a Kentucky corporation, can maintain this action in this court.

The third section of the act under which these bonds were issued by Mercer county provides that, if the county judge shall determine that a majority of the legal votes at the election were cast in favor of the subscription of stock to the Southern Railroad Company, he should enter an order subscribing for the county to the capital stock of the railroad company in accordance with the terms of the proposition voted on, "and he shall therefore cause to be pre-

pared and execute the negotiable bonds of such county \* \* \* which shall be signed by him as county judge, and attested by the county clerk with his official seal affixed thereto." The fourth section of the act provided that "the county judge of such county shall order that such bonds shall be deposited with a trustee or trust company, to be held in escrow, and delivered to the said railroad company when it shall become entitled to the same by the construction of its roads through such county," etc. The submission to the vote of the voters of Mercer county had additional conditions to those prescribed by the act, and we understand from the exhibit filed with the petition that the subscription was made upon the conditions prescribed by the order of submission, and that the defendant Pearson holds these bonds in escrow until these conditions are performed. The theory of the Jackson & Sharp Company action is that, when the conditions upon which the stock was subscribed were fully performed by the railroad company, the bonds in the hands of Pearson became the legal and valid bonds of the county of Mercer, and that its right of action arose from Pearson's wrongful detention of these bonds, the title of which has vested in it by reason of the performance of the conditions of the subscription. It may be assumed, on this demurrer, that the railroad company has, as alleged, complied with all of the conditions of the county's subscription to its capital stock, and that this compliance was prior to the assignment by the contract company to plaintiff of the right to these bonds, and that plaintiff is willing and able to deliver to the county of Mercer the $20,000 of the railroad stock. But is it not equally true that these bonds have never been issued by the county of Mercer, so as to become the binding and existing obligations of the county? If these bonds have never been delivered, and are not existing obligations to pay the money therein according to their tenor and terms, must not plaintiff's rights, whatever they may be, exist by and through the original subscription to the capital stock of the railroad company, which the contract company has assigned to the plaintiff? If these bonds had been delivered, and were subsisting obligations of the county of Mercer, then, under the case of Deshler v. Dodge, 16 How. 622, the citizenship of the contract company would not affect the jurisdiction of this court. In that case the supreme court sustained the jurisdiction of the circuit court, upon the ground of diverse citizenship, where a bank in Ohio transferred to a citizen of New York bank notes which had been distrained for taxes due the state of Ohio, and which were in the possession of a citizen and officer of Ohio. This decision was by a divided court, and was under the eleventh section of the act of 1789, which declared:

"Nor shall any district or circuit court have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made, except in cases of foreign bills of exchange."

The court say (page 631):

"It is admitted the assignors in this case could not have maintained the suit in the federal courts. We are of the opinion that this clause of the

statute has no application to the case of a suit by the assignee of a chose
in action to recover possession of the thing in specie, or damages for the
wrongful caption or detention, and that it applies only to cases in which
the suit is brought to recover the contents, or to enforce the contract con-
tained in the instrument assigned."

The theory of plaintiff's suit is that he is suing for the thing
in specie (the coupon bonds), and for damages for their wrongful
detention; but as these bonds, as a chose in action, have no legal
existence, can the suit be maintained, under the decision? It is
evident that these bonds, though regularly signed and sealed, and
delivered in escrow to the trustee, are not the valid and binding
bonds of the county until the conditions of the subscription have
been complied with, and then delivered by the trustee to the rail-
road company, or those claiming under said company. When de-
livered, they do not date back to the day of signing, but to the time
of the execution of the conditions upon which the subscription was
made. The railroad company, or those claiming under it, may
have a perfect legal right to have these bonds delivered, because of
a full compliance with the conditions upon which the subscription
was made; but, unless and until these bonds are delivered, they
are not the valid, negotiable bonds of the county of Mercer, which
may be bought and sold or transferred without regard to, and
disconnected from, the original contract of subscription. It is not
an existing bond of the county of Mercer which has been trans-
ferred to the plaintiff, but a contractual right to have such bonds
issued and delivered to the plaintiff. This right, whatever it may
be, comes from the terms of the original subscription of stock by
the county of Mercer; and, whatever may be the form of this
remedy sought, the right itself comes from and through that orig-
inal contract between said county and the Louisville Southern Rail-
road Company. The contract company took its right from the
railroad company, and the plaintiff derives its right from the con-
tract company; and the right of both must rest upon the enforce-
ment of the terms of the subscription of stock by the county of
Mercer, and its contract with the railroad company, and not other-
wise. While it is true the plaintiff is seeking to recover the pos-
session of these bonds, and not the principal or interest thereof,
it is nevertheless true that it is seeking, and must seek, to en-
force the contract made between the railroad company and the
county of Mercer, by which these bonds were put in escrow to await
the performance of certain conditions of the subscription of the
county to the capital stock of the railroad company. If plaintiff's
right to have these bonds delivered to it is assignable under the
Kentucky statutes, it must sue as the assignee of the contractual
rights of the railroad company, and for the enforcement of those
rights. The language of the act of August, 1888, follows that of
the act of 1789 upon this subject. It declares that:

"Nor shall any circuit or district court have cognizance of any suit, except
upon foreign bills of exchange, to recover the contents of any promissory
note or other chose in action in favor of any assignee or of any subsequent
holder if such instrument be payable to bearer and be not made by any
corporation, unless such suit might have been prosecuted in such court to
recover the said contents if no assignment or transfer had been made."

This is substantially the language of the act of 1789, under which the case of Deshler v. Dodge, 16 How. 622, was decided. We need not attempt to construe the words, "or if any subsequent holder of such instrument be payable to bearer and be not made by any corporation," as they can have no reference to the case at bar. The use of the word "contents" in the sentence is perhaps unfortunate, but as it was used in the act of 1789, and has been construed by the supreme court, we should have no difficulty in finding its mean·ing as applied to this case. In the case of Sere v. Pitot, 6 Cranch, 335, the supreme court decided "other choses in action" included open accounts; and the court, by Chief Justice Marshall, said the word "contents" is too ambiguous in its import to restrain the general term "choses in action." In the next case (Smith v. Kernochen, 7 How. 198) the court held that, in an ejectment brought on a mortgage assigned, the objection to the jurisdiction of the court could not be made on the general issue, but must be made by a plea in abatement. This provision of section 11 of the act of 1789 was not mentioned by the court. But the same court, in another case, soon after that, decided that the assignee of a bond and mortgage, who sues in equity to obtain payment, was within the provision of the eleventh section of the act of 1789, and must show that his assignor was competent to sue. Sheldon v. Sill, 8 How. 441. In deciding this case the court say:

"The term 'chose in action' is one of comprehensive import. It includes the infinite variety of contracts, covenants, and promises which confer on one party a right to recover a personal chattel or a sum of money from another by action."

The court, in Deshler v. Dodge, 16 How. 622, explained that by the phrase "right to recover a personal chattel" was not meant a recovery in specie, or damages for a tortious injury to the same, but a remedy on the contract, for the breach of it, whether the contract was for the payment of money, or the delivery of a personal chattel. In Bushnell v. Kennedy, 9 Wall. 390, Chief Justice Chase discusses this provision of the eleventh section of the act of 1789, and said:

"It has been recently very strongly argued that the restriction applies only to contracts which may be properly said to have contents; not mere naked rights of action founded on some wrongful act, some neglect of duty to which the law attaches damages, but rights of action founded on contracts which contain within themselves some promise or duty to be performed."

The court, however, decided that the twelfth section of the act of 1789, in regard to removals, had no such restrictive provision as the eleventh section. The language used by the chief justice was that of Judge Shipman in Barney v. Bank, 5 Blatchf. 115, Fed. Cas. No. 1,031, and a further quotation from the opinion of Judge Shipman will make clearer the distinction which he drew. The suit was for damages in failing to protest and give notice in regard to certain drafts which had been sent; the bank sued. The suit was not by the bank which originally owned the drafts, but by another bank, as assignee of the bank, which could not have

sued in the circuit court. The court, after using the language quoted by Chief Justice Chase, continued, and said:

"A suit to compel the performance of that promise or duty by securing to the plaintiff that which is withheld by the defendant is a suit to recover the 'contents' of the chose in action. Grant that in the case before us there was an implied promise or duty, the performance of which the law mer-chant, as applied to the course of business between the parties, cast upon these defendants; but the suit is not brought to enforce the performance of that promise or duty. It is not to secure the protest and notice of this commercial paper. It is to recover damages for the failure of the defendants to take the proper steps to preserve its value. This suit, therefore, being founded, not on a chose in action, for the purpose of recovering its 'contents,' but a mere right of action to recover damages imposed by law for a delinquency, is not within the prohibition of the statute."

Thus it will be seen that this case, which is the most favorable to plaintiff's contention known to me, does not sustain it, because this suit is to recover the bonds themselves, which are only deliverable under and by virtue of the contract of subscription between the railroad company and the county of Mercer; and what-ever damage Pearson may be liable for will be because of a breach of his contract to deliver these bonds, and thus make them valid and binding obligations, when the railroad company had fully complied with the conditions upon which they were to be delivered to that company or its assignees. The language of Rev. St. § 629, was substantially that of the act of 1789; and in Corbin v. Black Hawk Co., 105 U. S. 659, the court held that a suit to compel a specific performance of a contract, and enforce other stipulations, was a suit within that section, and could not be maintained in the circuit court, if his assignor could not have maintained it. See, also, Shoecraft v. Bloxham, 124 U. S. 735, 8 Sup. Ct. 686. The language of the act of March 3, 1875, is somewhat different, but, the cases thereon will throw some light upon the construction of the act of August, 1888. See King Bridge Co. v. Otoe Co., 120 U. S. 225, 7 Sup. Ct. 552; Metcalf v. City of Watertown, 128 U. S. 588, 9 Sup. Ct. 173; Blacklock v. Small, 127 U. S. 99, 8 Sup. Ct. 1096., The error in plaintiff's contention is, we think, in assuming that the contract company transferred to it subsisting valid coupon bonds of the county of Mercer, and that the trustee is wrongfully detain-ing them from it, when, in fact and in law, the contract company has, at the most, only transferred to it the right to have these bonds made valid and binding obligations by a proper delivery. This right to have such delivery must depend upon the compliance of the railroad company with the conditions which are precedent to such a delivery, and a part of the contract of subscription to the capital stock of the railroad company. The suit, although in the nature of an action of detinue, is only maintainable upon the idea that this contract has been complied with; and the court should so declare, and enforce the county's part of the contract by com-pelling the delivery of the bonds as valid obligations, and giving judgment, not for the detention of valid bonds owned by plaintiff, but for damages for refusing to deliver the bonds in compliance

with the contract of subscription after the railroad company had complied with the condition upon which they were to be delivered.

We cannot concede the force of the argument that these coupon bonds were perfected and valid obligations of Mercer county when the conditions of the subscription were fully performed, without a delivery by the trustee, Pearson, either to the railroad company or some one claiming under it. We think this second delivery was necessary, and such was clearly the intention of the parties, before they (these bonds) became binding and valid obligations of the county. This is shown by the fact that the bonds were to be immediately prepared and signed, and placed in the hands of the trustee as an escrow. This was long before the conditions could have been performed; and it contemplated that the matured coupons should be cut from the bonds before delivery, in the presence of the county judge. This trustee was to be, and was, selected by the county; and, presumably, his judgment as to the performance of the conditions would bind the county, though not the railroad company. There is some conflict in the cases as to the necessity for a second delivery by the holder of the escrow; but the weight of authority is, we think, that a second delivery is necessary. The general rule is, when an instrument is placed in the hands of a third person as an escrow, it takes effect from the second delivery; but such rule does not apply where either justice or necessity requires a resort to fiction in order to avoid injury in the case of intervening rights between the first and second delivery it shall have to relate back, and take effect from its first delivery as an escrow. Shirley v. Ayres, 14 Ohio, 307; 4 Kent, Comm. 454; Stanton v. Miller, 58 N. Y. 192. Thus, where a grantor died between the first and second delivery of an escrow, it is held the second delivery relates back to the first delivery, and is a valid deed. Here, the plaintiff claims only the rights of the railroad company; and it is clearly not the intention of the original parties that these bonds should be binding and valid from the delivery to the trustee, and thus bear interest from that time. But if we are in error in this, and these bonds became the valid obligations of Mercer county upon the full compliance with the conditions by the railroad, without any delivery by the trustee to it or its assignee, yet there must be, of necessity, some one to determine whether these conditions have been fully determined, and that is the object of plaintiff's suit. Thus, plaintiff's right to these bonds, if right there be, must come from the enforcement of the county of Mercer's stock subscription to the capital stock of the railroad company. These bonds, whenever they may be considered as issued and valid bonds, have not become disconnected with the original contract of subscription, so as to authorize plaintiff to recover them, except by the enforcement of that contract. Plaintiff's right to thus enforce this contract is because of his relation to it as assignee; otherwise, the right of recovery is in the railroad company. Young v. Clarendon Tp., 132 U. S. 345, 10 Sup. Ct. 107, is an interesting and instructive discussion of what is necessary to make a valid and binding municipal bond, but this opinion is already too long to venture on the

consideration of that case. The demurrer should be sustained, and it is so ordered.

In the other case (Pearson v. Louisville Southern R. Co.), Pearson brought in the Mercer circuit court a suit in equity, in which he sought to have the railroad company and the county of Mercer to interplead with each other, and have determined whether the $20,-000 of bonds in his possession as an escrow should be delivered to the railroad company, or be canceled. He alleged that the conditions upon which the bonds were deliverable had not been complied with, and stated wherein they had not been, and asked that the parties defendant should interplead, and that the court determine whether the bonds should be delivered to the railroad company, or be surrendered and canceled. This suit was brought January 16, 1891, and the railroad company was served January 18, 1891; and it is admitted by the parties that long before the institution of this suit the railroad company had transferred and assigned, without recourse, to the Southern Contract Company, all of its right, title, and interest in and to said $20,000 of bonds, and that long before the institution of said suit the Southern Contract Company had assigned in pledge all of its right, title, and interest in said bonds to the Pennsylvania Steel Company, and that D. S. Moore was the predecessor of Pearson, as trustee, from March, 1887, to July, 1888, and that while said Moore was trustee he was given written notice, which he accepted, that the railroad company had assigned all the bonds (Mercer county) to the contract company, and that the contract company had assigned the bonds in controversy to the Pennsylvania Steel Company; that on the 13th of June, 1891, the contract company caused its indebtedness to be paid to the steel company, and the pledge of the bonds was then released, and that on the 30th of October, 1891, the contract company executed a written assignment of said $20,000 of bonds to the Jackson-Sharp Company, to secure a debt due it; and that the Jackson-Sharp Company brought the suit which has been herein considered October 31, 1891. In the suit then pending in Mercer county, nothing was done until May 4, 1891, when the railroad filed answer, in which, among other allegations, was that the railroad company had long before the institution of the suit transferred and assigned to the contract company all of its interest in said bonds, and that company had assigned them to the Pennsylvania Steel Company, and that said railroad company had, at the request of the contract company, united in the assignment to the steel company, and in a written notice of the assignment to plaintiff Pearson's predecessor, Moore, and which had been accepted. The railroad company disclaimed any interest in the bonds then, or at the commencement of the suit. The plaintiff Pearson filed on the 9th of November, 1891, an amended petition, in which he makes the Southern Contract Company, Pennsylvania Steel Company, and the Jackson & Sharp Company parties defendant. On the same day a warning order for constructive service was entered, warning the Pennsylvania Steel Company and Jackson & Sharp

Company to appear and answer at the next April term, 1892. On the 18th of November, Mercer county appeared, and filed answer and cross petition, in which, among other prayers, it asked that the $20,000 be surrendered and canceled. The case was removed to this court under a petition, on account of local prejudice, January 23, 1892. These being the material facts, the county of Mercer and Pearson move to remand the cause to the Mercer circuit court. The ground for this motion, as stated in third paragraph of the petition, is that Jackson-Sharp Company had no interest in the controversy, or the bonds held in escrow by Pearson, at the time of the institution of his suit, but acquired its interest from the Southern Contract Company after the institution of the suit.

It is now settled the diverse citizenship must exist at the time of the institution of a suit against a party, as well as at the time of removal, to authorize a removal from a state court to a federal one. But as the Southern Contract Company was not before the Mercer circuit court, and, indeed, had not been made a party by Pearson when the transfer and assignment of these bonds was made to the Jackson & Sharp Company, and that company has always been a citizen of another state than Kentucky, I do not see how this rule can, by analogy, be applied to the case at bar. We do not, however, understand this to be the exact contention of the able and learned counsel. They claim, if we understand their argument, that as Pearson has brought a suit asking an interpleader between the original parties to the contract under which he held these bonds, without knowledge or notice of the interest or claim of the Southern Contract Company or the Jackson-Sharp Company in these bonds, a lis pendens was created, which prevented any disposition of these bonds which might deprive the Mercer circuit court from adjudicating the suit thus brought, as between the original contracting parties, and that this adjudication would bind the Jackson & Sharp Company. If Pearson had concluded the conditions of the subscription had been fully complied with, and delivered these bonds to the railroad company without notice or knowledge of the contract company or Jackson & Sharp Company's interest in them, he would not, perhaps, under the authorities, have been liable to them; and in such a state of case the effect of the notice to Moore (Pearson's predecessor) would be material. But here where the inquiry is as to the jurisdiction of the Mercer circuit court by reason of the suit as originally brought, and, whether or not it was a lis pendens as to the contract company and Jackson & Sharp Company, the notice to or knowledge of Pearson is immaterial. We are inclined to the opinion that the notice of the transfer of these bonds to the contract company given to Moore (the then trustee) was notice to the county of Mercer of the transfer, and might have bound the trust fund. If the adjudication upon the suit, as it was originally brought, would have bound the contract company in regard to these bonds, it not being a party to that suit, then the Jackson & Sharp Company, as its assignee, would be bound, as a lis pendens purchaser from it, but not otherwise. The purpose of this suit was to have the court decide whether or not

the conditions of the subscription had been fully performed, and, if performed, decree the delivery of the bonds; if not fully performed, to have them canceled, and, incidentally, to have the cost of the administration of the trust paid to the trustee. And to such a suit the real owner of these bonds, whether the title was a legal or an equitable one, was an indispensable party. Whether the previous transfer of these bonds to the contract company was a legal assignment, under the statute, under which that company could have sued in its own name for the delivery of the bonds, or only an equitable one, under which the contract company would have had to join the railroad company in a suit for them, in either event the contract company was a necessary party, under the Kentucky practice. The railroad company, having transferred the benefit of all of these bonds to the contract company, could not represent that company, and there was no lis pendens as to it by reason of the pending suit against the railroad company. The authorities cited by counsel do not sustain this contention. Thus, in Hoyt v. Jones, 31 Wis. 399, the court conceded the holder of the unrecorded legal title was not bound by a judgment in a suit in which he was no party, nor was he bound because the holder of the recorded title was a party, but held that the registration laws required registration of titles; and because this holder of an unrecorded title laid by for years, and did not have his title registered in the proper office, he was estopped from claiming his superior title against a purchaser for value, without notice of his title, from one claiming under the judgment. This case concedes there was no lis pendens as to the holder of the unrecorded title, but decides against this title holder upon a construction of the registration law and his own acts as an estoppel. The case of Norton v. Birge, 35 Conn. 250, was one where a person loaned money, and took mortgages from a mortgagor, whose title was then sought to be set aside as fraudulent by a pending suit, and the property had been at the time attached. Neither is the case of Boice v. Insurance Co., 114 Ind. 480, 15 N. E. 825, in point. It may be conceded that had the contract company been sued, and before the Mercer circuit court, it could not have transferred its right, title, and interest in these bonds to a citizen of another state during the pendency of the suit, so as to give that citizen the right of removal to this court. This is all the cases cited prove, unless it be the case of Railroad Co. v. Findley, 32 Fed. 641. In that case, James A. Findley, as administrator of Elizabeth Findley, brought in August, 1880, an action of ejectment against one Weaver, who was the tenant in possession, as an employe of the Atlanta & Charlotte Railway Company, to recover a lot of land, upon which was located a part of the roadbed, and houses for the use of the company. In March, 1881, the Atlanta & Charlotte Railway Company, which was a Georgia corporation, made a perpetual lease of all of its property to the Richmond & Danville Railroad Company, which was a Virginia corporation. This latter company, in 1884, brought in the Georgia court where the ejectment was pending a bill in equity, and obtained an injunction thereon against James Find-

ley, administrator, and the heirs of Elizabeth Findley. Subsequently the equity suit was, upon motion of the Richmond & Danville Railroad, so removed to the United States circuit court, and a motion to remand to the state court was afterwards sustained by that court. The court says, in its opinion:

"Although it appears that, at the time that the Atlanta & Charlotte transferred its property to the Richmond & Danville Company, it had not made itself a party, formally, to the action of ejectment, it was the real defendant, knew of the action, and was bound thereby. Rodgers v. Bell, 53 Ga. 94."

If, by the practice in Georgia, the Atlanta & Charlotte Railroad Company was bound by the judgment in the ejectment suit which was served upon its employe, this case is only what the other cases decided. We conclude that the ground alleged for the motion to remand to the Mercer circuit court is not well taken, and the motion must be overruled, and it is so ordered.

After the overruling of the motion to remand, the same parties again moved to remand the cause, on other grounds, whereupon (July 19, 1892) this court filed this following opinion:

BARR, District Judge. The present motion to remand is upon grounds different from those heretofore considered and overruled. As the grounds presented go to the jurisdiction of this court, they should be considered, although the former motion to remand has been overruled.

These grounds may be stated thus: (1) The attitude of the Jackson & Sharp Company is not that of a defendant, but a plaintiff. (2) That all removals to the circuit court must be of suits of which original jurisdiction could have been taken, and that this suit is one of which the circuit court could not have taken original jurisdiction.

The bill of Pearson is much more than a bill of interpleader. He does not, in the bill, assume the position of a mere stakeholder, but rather that of the representative of Mercer county, who appointed him. The allegations of his bill, if confessed, would entitle him, not only to a decree for his expenses and commissions, with a lien on the bonds in his hands, but also, we think, to a cancellation of the bonds held by him in escrow. This is not a mere bill of interpleader. Killian v. Ebbinghaus, 110 U. S. 571, 4 Sup. Ct. 232; Daniell, Ch. Pr. 1668, 1669; Story, Eq. Pl. § 297. The fact that the Jackson & Sharp Company has filed in this court a cross bill against Pearson, Mercer county, the railroad company, and the contract company, in which it seeks to have a decree for the delivery of the bonds, does not change the relation which that company was in in the state court before and at the time of the removal. It was a defendant there to a bill which sought affirmative relief against it. This removal was had under the local prejudice clause of the second section of the act of 1887, as corrected by the act of August 13, 1888, which is as follows, viz.:

"And where a suit is now pending, or may be hereafter brought in any state court, in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, any defendant,

being such citizen of another state, may remove such suit into the circuit court of the United States for the proper district at any time before the trial thereof, when it shall be made to appear to said circuit court that from prejudice or local influence he will not be able to obtain justice in such state court, or in any other state court to which the said defendant may, under the laws of the state,·have the right, on account of such prejudice or local influence, to remove said cause; provided that if it further appear that said suit can be fully and justly determined as to the other defendants in the state court, without being affected by such prejudice or local influence, and that no party to the suit will be prejudiced by a separation of the parties, said circuit court may direct the suit to be remanded, so far as relates to such other defendants, to the state court, to be proceeded with therein."

It is insisted that the circuit court could not take original· jurisdiction of this suit, under the first section of this act, and therefore the court could not get jurisdiction by removal. This court has heretofore decided that the Jackson & Sharp Company could not sue·for the delivery of these bonds as the assignee of the Southern Contract Company, because that company, being a Kentucky corporation, could not sue in this court. It may, however, be claimed that this provision of the first section of the act of 1887 is only a limitation upon the jurisdiction of the circuit court when the suit is brought on a promissory note or other chose in action, and does not apply to a removal suit, where the controversy is as to the contents of a chose in action, when the diverse citizenship exists, and the defendant in the state court is a citizen of a state other than the one in which it is brought. See Bushnell v. Kennedy, 9 Wall. 390. But we do not think it necessary to consider the question suggested, because, if the parties be arranged according to their interest, considering the suit as one by either Pearson, trustee, or Mercer county, it will be necessary to join at least one Kentucky corporation with the Jackson & Sharp Company. The Southern Railroad Company was the only contracting party with Mercer county, and as such is a necessary party to any suit that either Mercer county or Pearson, trustee, might bring in regard to these bonds; and it is in fact a codefendant with the Jackson & Sharp Company and the contract company in the suit as removed. The inquiry, therefore, must be · whether, under the provision of the fourth clause of the second section of the act of 1888, all of the defendants must be citizens of states other than that of the plaintiff, to give jurisdiction of a suit removed because of prejudice and local influence. This is a question that remains undecided by the supreme court, and the decisions of the circuit courts are in conflict. The supreme court has, however, decided that the limitation of $2,000 applies to cases removed under the fourth clause of the second section of this act. In Re Pennsylvania Co., 137 U. S. 456, 11 Sup. Ct. 141, the court say:

"The fourth clause [the one in question] describes only a special case comprised in the preceding clauses. The initial words, 'And where,' are equivalent to the phrase, 'And when in any such case.' In effect, they are tantamount to the beginning words of the third clause, viz. 'And when in any suit mentioned in this section.' "

But as the third clause gives the right of removal from a state court in a controversy which is wholly between citizens of different

states by one or more of the defendants actually interested in such controversy,—hence, of a suit not within the original jurisdiction of the court,—this language of the supreme court could not have been intended to decide the present question. The previous provisions, which were similar to this one, were declared by the court to give the right to remove the entire suit, although there might be other controversies in which citizens of the state in which it was brought were parties defendant. Barney v. Latham, 103 U. S. 205; Brooks v. Clark, 119 U. S. 512, 7 Sup. Ct. 301. The subsequent case of Fisk v. Henarie, 142 U. S. 459, 12 Sup. Ct. 207, shows that the court did not intend either to decide, or lay down a rule which would decide, the present question. In that case there were three defendants who were citizens of the state of Oregon, where the suit was brought, and the other defendants were citizens of California. The citizens of California had removed the case from the state court to the circuit court, and the trial judge had, in an able and elaborate opinion, construed this fourth clause, and held that it authorized the removal from the Oregon state court, although the plaintiff and three of the defendants were citizens of that state. The supreme court reversed the case, and directed it to be remanded to the state court, not because the circuit court had no jurisdiction, but because the petition and removal were too late. This decision was by a divided court, and we cannot presume the court would have thus disposed of the case, on a point of practice, when the case In re Pennsylvania had already laid down a rule of construction of this clause which would deprive the circuit court of jurisdiction of the suit itself. The court, in closing its opinion, say:

"Many other questions of interest and importance arise upon this record, and have been argued by counsel, but the conclusion at which we have arrived renders their determination unnecessary."

We think that it may be fairly assumed that the court not only did not decide this question, but that it was intended to remain open until it became absolutely necessary to decide it. This view is strengthened by the language of the chief justice, who delivered the opinion in Fisk v. Henarie, in the subsequent case of Wilder v. Iron Co., 46 Fed. 682. He says:

"Assuming that a single defendant, being a citizen of a state other than that in which the suit is brought, who is jointly sued with other defendants, citizens of the same state as the plaintiff, may remove the suit to the circuit court upon making it appear to the court that, on account of local prejudice or local influence, he cannot obtain justice in the state court or courts, still the question remains whether this can be done where the plaintiffs are not all citizens of the state in which suit is brought, being all concerned adversely to the nonresident defendant, who seeks to remove the case."

The court decides that all of the plaintiffs must be citizens of the state in which the suit is brought, and, this not being the fact, remanded the case to the state court. The evident intention of the chief justice was to leave the present question undecided, although the conclusion of the court as to the plaintiffs in such cases may tend to sustain the contention of the counsel of Pearson as to the defendants.

· The fourth clause in express terms changed the previous law in regard to who might have a removal from the state courts. The previous law allowed a plaintiff, as well as a defendant, to remove the case. Now, only a defendant can have a removal. Formerly, all the defendants had to unite in the petition for removal. Now, any defendant, being a citizen of another state than the one in which the suit is brought, can have a removal upon making out the proper grounds. We construe this fourth clause of the second section of this act as allowing any defendant who is a citizen of another state than that in which a suit is brought, where there is a controversy between a plaintiff or plaintiffs and such defendant, although there may be codefendants who are citizens of the same state as the plaintiff or plaintiffs. It is a settled canon of construction to give effect, if it can be done, to all of the words of an enactment. If the contention of the able counsel be correct,—that all of the defendants in such a suit must be citizens of states other than that of the plaintiffs,—the words in this clause, "being such citizen of another state," are unnecessary and meaningless, since only defendants, by the express language of the clause, can remove. If, therefore, all of the defendants must be citizens of another state than that of the plaintiff, why describe the defendant as "any defendant being such citizen of another state?" Is there not a clear and distinct implication that there might be other defendants who were not citizens of another state? Again, if the diverse citizenship must exist as between all of the plaintiffs and all of the defendants, why the proviso, in this clause, that if it appear the suit thus removed can be fully and justly determined, as to the other defendants, in the state court, without being affected by such prejudice or local influence, and that no party to the suit will be prejudiced by a separation of the parties, the circuit court may direct the suit to be remanded, so far as it relates to such other defendants, to the state court? Is it to be assumed that the circuit court, having, by order of removal, obtained jurisdiction over a suit in which the diverse citizenship exists, as between all of the plaintiffs and all of the defendants, is to determine whether the suit might not be fully and justly tried in the state court, as to the other defendants, who are citizens of another state to the one in which it was originally brought, and, if the court determine it may be thus tried, as to the other defendants, citizens of another state, remand the suit, as to them? This, too, whether the other defendants, citizens of another state, asked or desired a return to the state court? Such a construction would indicate that, as between the federal and state courts, the preference was to be given the state court, even where the constitution and laws had clearly conferred jurisdiction upon the federal courts. But if we assume that this fourth clause means that suits might be removed from a state court to a federal court, in which some of the defendants were not citizens of another state, but citizens of the same state as that of the plaintiff, we readily see the reason for the proviso. The constitution provides for the jurisdiction of the United States courts in controversies between citizens of different states; and congress has, in the third clause

of this section, provided that if there be in a suit a controversy which is wholly between citizens of different states, and which can be fully determined as between them, the entire suit may be removed into a circuit court of the United States. Hence, the fourth clause is construed by us in perfect harmony with the third clause. The difference being, in respect to diverse citizenship, that in the third clause the controversy must be wholly between citizens of different states, and one that can be fully determined, as between them; and in the fourth clause the controversy must be between a citizen of the state in which the suit is brought, and a citizen of another state, but need not be wholly between them. Hence, the purpose of this proviso to the fourth clause. The general result of the act of 1887–88 has been to greatly diminish the jurisdiction of the circuit court, and it may be assumed that such was the general purpose of congress, in its enactment; but we cannot assume such a purpose, and then, in the endeavor to carry it out, ignore the obvious meaning of the language of the act itself. Although there have been dissents by one or more of the circuit courts from the conclusion arrived at by Judge Jackson in his able opinion in Whelan v. Railroad Co., 35 Fed. 849, we think that opinion remains unanswered, and his conclusion upon the question under consideration has not been either overruled or modified by the supreme court. See Id., 35 Fed. 849; Hall v. Agricultural Works, 48 Fed. 600; Railroad Co. v. Orton, 32 Fed. 470; Roraback v. Pennsylvania Co., 42 Fed. 420; Anderson v. Bowers, 43 Fed. 321. The motion to remand must be overruled, and it is so ordered.