COLER v. GRAINGER COUNTY et al.

(Circuit Court of Appeals, Sixth Circuit.    April 14, 1896.)

No. 368.

1. CIRCUIT COURT OF APPEALS—JURISDICTION.
    When the record upon an appeal from the circuit court to the circuit court of appeals presents both a question as to the jurisdiction of the former court, and other questions, which, if the circuit court is found to have had jurisdiction, must be disposed of, the court of appeals has jurisdiction of the appeal, and must consider the question of the jurisdiction of the circuit court, although that court has dismissed the case for want of jurisdiction, and the circuit court of appeals act provides (section 5) that, where the question is alone of jurisdiction, it is to be certified to the supreme court.

2. CIRCUIT COURT—JURISDICTION—DIVERSE CITIZENSHIP—ASSIGNMENT OF CHOSE IN ACTION.
    The county of G., Tenn., under legislative authority, subscribed for $75,000 of stock of the M. R. R. Co., a Tennessee corporation.    This subscription, together with the stock for which it was made, was assigned to the contractors for the construction of the road, and by them assigned to a New York bank as security for a loan.    The bank, upon default in payment of the loan, sold the subscription and stock, at public sale, to a citizen of New York, by whom it was assigned to one C., a citizen of New Jersey.    C. brought suit in a federal court against the county to enforce the subscription, and compel it to take the stock and levy a tax to pay therefor.    By an amendment to the bill he set up the appointment as receiver of the railroad of one S., a citizen of Ohio, whom he made a party to the suit, and alleged that the legal title to the subscription had passed to S., by virtue of his appointment, and that he was bound, pursuant to a contract of the railroad company, to collect the subscription for the benefit of the assignee, and to bring suit for that purpose, but had

refused to do so. This suit was dismissed for want of jurisdiction. *Held* that, under section 1 of the act of March 3, 1875, as amended by the acts of March 3, 1887, and August 13, 1888, the circuit court had no jurisdiction of the suit to enforce a contract originally made between two citizens of Tennessee, and the first assignment of which was voluntary, even if the subsequent sale by the New York bank was to be regarded as forced by operation of law.

3. SAME—PROPER PARTIES—RECEIVER.

*Held*, further, that the naked legal title to the subscription did not pass to S. by virtue of his appointment as receiver of the railroad company,—not being essential to the proper discharge of his duties as such,—nor was he bound to perform the company's agreement to sue for the benefit of its assignee, and, accordingly, that S. was not a necessary or proper party to the suit, and his presence could not give jurisdiction to the federal court.

Appeal from the Circuit Court of the United States for the Northern Division of the Eastern District of Tennessee.

This is an appeal from a decree of the circuit court of the United States for the Northern division of the Eastern district of Tennessee dismissing a bill filed by William N. Coler, Jr., against the county of Grainger and T. J. Smith, receiver of the Morristown & Cumberland Gap Railroad Company, appointed in another proceeding in the same court entitled "John Coleman vs. The Morristown & Cumberland Gap R. R. Co. et al." Coler's bill was based upon a written contract of subscription for $75,000 of the par value of the capital stock of the Morristown & Cumberland Gap Railroad Company, entered into, as alleged, by the county of Grainger, by its proper officers, and with due legislative authority. The bill averred that the railway company was organized under the laws of Tennessee for the construction and maintenance of a railroad from Morristown, in Hamlin county, Tenn., through Grainger county, to a connection with the Knoxville, Cumberland Gap & Louisville Railroad, which was already constructed and in operation in the western part of said Grainger county; that this subscription was a consideration for the construction of the road; that the road was constructed, and that the contract of subscription, having been fulfilled on the part of the railroad company, was binding upon the county; that the railroad company had assigned the contract of subscription, together with $75,000 of the par value of the stock, to Allison, Shafer & Co., the principal contractors in the construction of the road, to enable them to borrow money for the completion of the road; that this was done with the knowledge and consent of Grainger county; that Allison, Shafer & Co. borrowed a large sum of money from the Western National Bank of New York, and deposited the contract of subscription as collateral to secure payment of the same; that afterwards, when the debt was due and not paid, the bank sold the subscription, with the stock attached, to Jordan L. Mott, a citizen of New York; that the sale was public, and under the laws of New York providing for, authorizing, and regulating the same, and judicial in character, and by virtue thereof the said contract of subscription, and said stock, with all rights thereunder against said county of Grainger, and charged with the same trusts in favor of said county of Grainger, passed to said Jordan L. Mott, Jr., who was and is a citizen of New York; that on February 26, 1894, said Mott transferred the stock and contract of subscription to the complainant, a citizen of New Jersey at the date of the transfer to him, and who still remains such; that the county refused to take the stock and pay for same. The complainant asked a decree adjudging the obligation of the county upon the subscription, and compelling it, by decree of specific performance, to take the stock, and to levy the tax and pay the same as provided by the law of the state of Tennessee, or to issue bonds at the election of the county. By way of amendment to the bill the complainant further alleged that on May 20, 1892, John Coleman, a nonresident of Tennessee, and a citizen of another state, filed his original creditor's bill against the Morristown & Cumberland Gap Railroad Company in the circuit court of the United States for the same district and division, alleging that the railway company was indebted to him,

and that it was insolvent, and asking that its affairs be wound up as an insolvent corporation, and that the court take jurisdiction of the same, and direct that its affairs should be wound up in said cause; that the court appointed T. J. Smith, of the state of Ohio, to be the permanent receiver of the Morristown & Cumberland Gap Railroad Company, and of the property and assets of the railway company, and directed him to take charge and possession of all the property, real and personal, of the said railway company; that Smith at once qualified and took charge of the railroad and its assets, and still retained the same, and was then acting as such receiver, under an order of the court, and that the suit was still pending in the court, and undisposed of; that the court having further ordered that all parties having claims against said insolvent railway company should file the same therein, and that they should be, and they were, and still were, enjoined from proceeding against said insolvent railway company or its property, or other assets, otherwise and elsewhere; that on the 31st of January, 1894, a decree was pronounced in the court adjudging a large portion of claims to be liens upon said road, and the remainder were adjudged to be general claims against the said railroad company, and said railroad was ordered to be sold to satisfy said lien claims first, and it was directed that any surplus should be applied to the general debts, but that the sale had not yet been made; that the subscription to the capital stock of the railroad by the county had been made with the Morristown & Cumberland Gap Railroad, and the legal right to the same, and to bring action thereon, was vested in the said railroad company, but was now vested in the said T. J. Smith, as receiver as aforesaid, by virtue of his appointment by this court; that in equity the subscription was due to complainant, and that it was the duty of the receiver to collect the subscription from Grainger county for the benefit of the complainant; that the railroad company had contracted with Shafer, Allison & Co. to collect this subscription, when due, for the benefit of their assignees, and that the complainant was advised and insisted that the said T. J. Smith, representing the railroad company under the orders of the court, was bound to bring said suit, and that he had wholly failed and neglected, and still refused, to institute any legal proceedings, or to take any legal steps, to collect the subscription, though specially requested thereto; that the remedy of complainant at law to recover was embarrassed; that the receiver was a necessary party to collect the subscription, but, on account of his said refusal, complainant was without remedy, except in a court of equity. A demurrer was filed to the original bill before amendment. Thereupon the amendment already described was filed by leave of court granted as follows:

"In the Circuit Court of the United States for the Northern Division of the Eastern District of Tennessee.

"John Coleman vs. Morristown & Cumberland Gap R. R. Co. (No. 942 and 954), and Wm. N. Coler, Jr., vs. Grainger County (No. 1,001).

"The complainant, Wm. N. Coler, in the second cause above named, No. 1,001, upon application for that purpose, and for sufficient reasons appearing to the court, is allowed to amend his original bill by adding a sixth paragraph thereto, which shall follow the fifth paragraph of the bill, and precede the prayer thereof. Said amendments relate to the receiver of the Morristown & Cumberland Gap Railroad Company, and make him a defendant to said bill, and are accordingly made by inserting said amendments on the face of said original bill. And said original bill is further allowed to be amended by inserting the name of the said T. J. Smith, as one of the defendants, in the caption of said bill, and also by striking out of the fourth paragraph of said bill the following words: 'And agreed to take said stock and to pay said subscription to the holders thereof, when said road was completed.' It is further ordered that this order be entered in the said first above-named cause of John Coleman against the Morristown & Cumberland Gap Railroad Company, et al.; and the injunction granted in said first above-named cause against bringing suits against said receiver is so far modified as to allow the said bill of the said Wm. Coler to be filed against said receiver and said county of Granger as said original bill is now amended, in the nature of a petition of intervention in the said insolvent proceedings of John Coleman against Morristown & Cumberland Gap Railroad Company et al."

Smith, the receiver, filed an answer to the bill, in which he admitted the subscription, and did not deny the assignment, but asked for proof thereon. He further admitted the demand upon him to bring the suit, and his refusal to do so. The county of Grainger submitted a demurrer on the following grounds: First. "There are no facts stated and set forth in the original and amended bills which authorize this court to take jurisdiction of the demands therein sued upon, either on account of the character and nature of the demands, or the citizenship of the parties. Second. The complainant seeks in his said original and amended bills to recover the contents of a contract which it is alleged the defendant Grainger county made with the Morristown & Cumberland Gap Railroad Company, a corporation created under the laws of Tennessee, and a citizen of that state, by subscription to its capital stock in the sum of $75,000, payable in cash, or bonds of the defendant, claiming to hold and own said contract as assignee of the said railroad company, when this court is expressly prohibited from taking cognizance of such a chose in action by act of congress of March 3, 1887, because no suit could have been prosecuted in this court to recover the said contents if no assignment or transfer had been made. Third. Because it appears that the complainant has a clear, adequate, and complete remedy at law to recover upon, and enforce the performance of, the contract sued upon, and no sufficient reason is shown for the interposition of a court of equity in his behalf. Fourth. Defendant demurs to so much and such part of the said original and amended bills as seek to compel it to issue bonds in payment of its alleged subscription to the capital stock of the Morristown & Cumberland Gap Railroad Company, because the statutes contained in the Code of Tennessee (sections 1278–1296), under which the proceeding for said subscription was had, do not authorize counties to issue bonds for said purpose, and without such authority the defendant cannot do so."

In the Coleman case the amended bill, as an intervening petition, was dismissed on the ground that the matters therein sought to be litigated were foreign to the purpose of the Coleman suit, and also that the court had no jurisdiction to enforce the judgment sued upon by petition. The dismissal was without prejudice to bring another suit. In the Coler suit the following entry was made: "Came the complainant, by solicitor, and moved the court to proceed with this cause under original bill, as amended, as an original or dependent bill, which motion is overruled and disallowed. Thereupon this cause came on to be heard before the Honorable Charles D. Clark, judge," etc., "sitting in equity, upon the original bill of the complainant, the amendment made thereto, and the demurrers filed by the defendant to the original bill, and to it as amended; and it appearing to the court from the amendment made to his bill, and the proceedings had thereon in the case of John Coleman vs. Morristown & Cumberland Gap Railroad Company, that the complainant had filed the same as a petition of intervention in the cause now pending in this court, of John Coleman vs. the Morristown & Cumberland Gap Railroad Company, and has thereby elected to abandon it as an original bill and proceeding in this court, and conceded the demurrer filed by the defendant on account of want of jurisdiction in this court over the subject-matter in controversy to be good in law, which is also the judgment of this court, and that for these reasons the suit should be dismissed, the court is pleased to order, adjudge, and decree that the said demurrer be sustained, and that the complainant's bill be, and the same is hereby, dismissed, and that the defendant Grainger county recover of Wm. N. Coler, and Templeton & Cates, his security on his prosecution bond, all the costs of this cause, for which execution shall issue."

From this decree the defendant filed his assignments of error, as follows: "(1) On July 26, 1895, said United States circuit court entered a decree in said cause, nunc pro tunc as of March 20, 1895, dismissing complainant's bill, and adjudging costs against complainant, and holding that the amendment to his bill made by complainant by leave of court on January 2, 1895, was an abandonment of the same, and that complainant 'thereby elected to abandon it as an original bill and proceeding in this court, and conceded the demurrer filed by defendant on account of want of jurisdiction in this court over the subject-matter in controversy to be good in law, which is also the judgment of this court.' This holding and decree was manifest error

because said amendment only made T. J. Smith, receiver of the Morristown & Cumberland Gap Railroad, a defendant, and showed that said receiver had been appointed in the insolvent case of John Coleman against the Morristown & Cumberland Gap Railroad Company in this court, and prayed to be allowed to file said bill, as amended, in the nature of a petition of intervention in said insolvent proceedings, and then prayed full relief on the bill, as amended, against Grainger county and against said receiver. This amendment was allowed to be made, and new process was awarded by the court, on said January 2, 1895, and was not an abandonment of said original bill, but simply brought said receiver properly before the court in said cause. (2) Said judgment of the court in sustaining said demurrer was further erroneous because said original bill, as amended, showed that the property sued for, viz. the subscription of Grainger county set out in the bill as amended, was legally, and by judgment of this court in said insolvent proceedings, in the custody of said receiver, the right of action for said subscription was in said receiver, who was an officer of this court, and was therefore a proper party to said suit, and could only properly be sued in this court, and by leave of this court, in reference to said asset. (3) Said bill further showed that the legal title in said subscription, and right of action therefor, had to pass to and was vested in said receiver by judgment of this court,—that is, by operation of law, under the judgment appointing him to said receivership, —and as said receiver was at that time an officer of the court, and could sue in this court, so could complainant, who owned the equitable interest in said subscription. (4) Said bill further showed that the complainant owned the equitable right and interest in said subscription by public sale under the laws of New York, which was therefore judicial in character, and passed to complainant the right to receive said subscription by operation of law, and not by voluntary assignment. (5) The subscription of Grainger county to the Morristown & Cumberland Gap Railroad, which is set out in the bill, was and is valid, authorized by the statute law of the state of Tennessee, and binding on said county, and said demurrer should also have been overruled, and defendants should have been required to answer said bill and amendment. (6) The court erred by the decree of March 18, 1895, in the said insolvent case, in dismissing said bill and amendment, and treating the same as an ordinary intervention in said insolvent case, and as an abandonment of all rights thereunder."

After Smith, receiver, had filed his answer, it appeared that, in the suit in which he had been appointed, the railroad company made application to give bond for the payment of Coleman's claim, and to have the receiver discharged. This was done. After the receiver of the federal court had been discharged, Shields was appointed receiver by the chancery court of the First chancery district in Tennessee on a proceeding by another creditor of the railroad company, and Shields, as receiver, went into possession. Subsequently the federal court, upon application made in the Coleman suit, appointed one Whitney as temporary receiver. Whitney ousted Shields from possession. Shields, by intervening petition, appeared in the federal court, and raised the question of the jurisdiction of the federal court to put Whitney in possession after he (Shields) had taken possession of the assets and property of the road under the state court order. The federal circuit court denied the prayer of the state court receiver's petition, and held that the federal receiver was properly in possession. Shields appealed from this order to the supreme court of the United States (15 Sup. Ct. 570), and that court upheld his claim, reversing the order, putting Whitney in possession, and directed that the assets and property of the road be turned over to Shields, as receiver of the state court.

Templeton & Gates (Price & Klutz, of counsel), for appellant.
Wm. S. Dickson and Shields & Mountcastle, for appellees.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge (after stating the facts as above). It is first objected that this court has no jurisdiction of the appeal here

taken, because it presents only the question of the jurisdiction of the court below. The argument is that by section 5 of the court of appeals act, where the question is alone of jurisdiction, it is to be certified to the supreme court, and by section 6 of the same act the court of appeals is given jurisdiction only in those cases of appeal and error not provided for in section 5. It has been held that, where the only question raised upon the record before the court of appeals is a question of jurisdiction of the court below, the appeal must be dismissed, because the court of appeals is not vested with jurisdiction to consider that question only. Manufacturing Co. v. Barber, 9 C. C. A. 79, 60 Fed. 465; Railroad Co. v. Meyers, 10 C. C. A. 485, 62 Fed. 371; Allen v. Strong, 17 C. C. A. 124, 70 Fed. 273; U. S. v. Severens, 18 C. C. A. 314, 71 Fed. 768. The motion to dismiss the appeal, however, cannot be sustained in the case at bar, because the record does present questions other than that of the jurisdiction of the circuit court. This is quite evident from the assignments of error. It is true that the court below dismissed the bill for want of jurisdiction, but this court could not dispose of the case, should it disagree with the court below on the question of jurisdiction, without proceeding to consider the other grounds stated in the demurrer to the amended bill, which questioned the equity of the bill, and the validity of the county's subscription for stock. In such a case it is quite clear that an appeal lies to this court, and that, ex necessitate, this court must consider the question of jurisdiction in order that it may proceed to decide the other questions raised upon the merits. Railroad Co. v. Meyers, 10 C. C. A. 485, 62 Fed. 371. We are therefore brought to the question whether there was in fact jurisdiction in the court below to entertain the bill. Section 1 of the act of March 3, 1875, which fixed the jurisdiction of the circuit court of the United States, as amended by the acts of March 3, 1887, and August 13, 1888 (25 Stat. 433), contains this provision:

"Nor shall any circuit or district court have cognizance of any suit, except upon foreign bills of exchange, to recover the contents of any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made."

This clause has been construed by several circuit courts of the United States, and its effect has been held to be to prevent jurisdiction of the circuit and district courts in all suits by an assignee of a chose in action, except where the chose in action is a foreign bill of exchange, or where it is founded on an obligation made by a corporation that is payable to bearer, and is negotiable by mere delivery. Wilson v. Knox Co., 43 Fed. 482; Newgass v. City of New Orleans, 33 Fed. 196; Jackson & Sharp Co. v. Pearson, 60 Fed. 113. A contract to pay money for stock is a chose in action, within the meaning of this section. The term "chose in action" is one of comprehensive import. It includes the infinite variety of contracts, covenants, and promises which confer on one party the right to recover a personal chattel or sum of money from

another by action. Sheldon v. Sill, 8 How. 449; Corbin v. Black Hawk Co., 105 U. S. 664, 665. The original parties to the chose in action were both citizens of Tennessee. The obligor, Grainger county, was a corporation of that state, and the railroad was a corporation organized under its laws. The chose in action passed by voluntary assignment to the principal contractors of the railroad company; from them to the Western National Bank, as collateral, by voluntary assignment from the bank, through a public sale, to a citizen of New York; and from him to a citizen of New Jersey. It is sought to bring the case within an alleged exception to the statute by contending that the transfer of title was, by operation of law, like that from an intestate to his administrator, because it is said in the bill that the sale by the Western Bank of the stock to Mott, a citizen of New York, was a judicial sale. This contention is obviously untenable. The original assignment was to the principal contractors, and by them to the bank. These assignments were voluntary. The subsequent changes of title, whether forced by operation of law or voluntary, could have no effect to avoid the operation of the statute, even if it be conceded that a transfer of title by operation of law does not come within its terms. If such an exception could be upheld, it certainly could only apply to a transfer of title by operation of law from the original holder of the chose in action,—the original obligee under its terms.

But the jurisdiction under the bill is sought to be upheld on another ground. It is said that Smith, the receiver, was a necessary party to the bill, because he held the legal title to the subscription, and that the action must be brought in his name, for the benefit of the equitable owner, and is therefore one arising under the laws of the United States within the decision of Railroad Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905. There is an averment in the bill that in the original contract of assignment it was agreed that the company should enforce the payment of the stock for the benefit of their contractors or their assignees, and that, as all assets of the company had passed into the hands of the receiver, it was the duty of the receiver to carry out this contract, and bring the suit for the benefit of the complainant. It is true that by the order of the court the receiver was vested with the power and right and title, so far as it was necessary, to take possession of the railroad, to operate it, and to assert the company's title to any property in the hands of others. But the company had nothing except the naked legal title to the subscription. It had parted with all its beneficial interest. The naked legal title did not pass to the receiver, because it was not essential to the proper discharge of, his duties as receiver. Beach, Rec. § 195. Nor was there any ground for applying to the receiver to bring the suit on the subscription which the company had failed to bring. The receiver was not obliged to pay the claims against the company, or to perform its contracts. If the company had not complied with its contract to enforce the subscription, there might possibly be a cause of action for damages, and a claim against its estate to be filed with the receiver, but it did not lie within the power of the court of equity to compel a compliance with the agreement

to collect the subscription. The remedy at law for the breach would have been quite adequate. If it had been necessary in the action that the owner of the naked legal title to the subscription should be made a party, then it would have been within the power of the court of equity to bring in such party; but it was unnecessary here, because the subscription was not to be sold as property. And, even if it had been necessary, the company, and not the receiver, would have been the proper party, because the naked legal title had not passed to the receiver. In enforcing the subscription in equity, however, the assignee could recover without the presence of the holder of the legal title. It is manifest, then, that the receiver was made a party merely to create an excuse for federal jurisdiction, and not because his presence was necessary or useful. His presence as a mere nominal and unnecessary party could not give the court jurisdiction in a cause of action which was otherwise not within its cognizance. This conclusion makes it unnecessary for us to consider the effect of the decision of the supreme court of the United States as to the want of jurisdiction of the federal circuit court in the Coleman case to appoint Whitney a receiver. The decree of the circuit court dismissing the bill for want of jurisdiction is affirmed, at the costs of the appellant.