## S. S. ARMSTRONG *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY CO.

Argued April 19, 1893.   Decided May 5, 1893.

### The Facts Stated.

The plaintiff shipped a car load of goods, including some horses, from Redding, Ill., to Chicago, over the C., S. F. & C. R. R., which terminated at Chicago. He intended to have the property transported to Lakefield, in this state, and verbally agreed with the C., S. F. & C. R. R. Co. as to what the charge should be to that point. He, however, entered into a written contract with that company merely for transportation to Chicago for a specified price, and that a person in behalf of the plaintiff should have passage with the car to take care of the property. Plaintiff sent a man with the car, giving him money to pay the freight, but gave him no express authority to enter into any contract in his behalf. At Chicago this agent, in behalf of his principal, contracted with the defendant for the further transportation from there to Lakefield, in which contract it was provided that *no claim for loss or damage to the stock should be valid unless made in writing within thirty days after the same should have occurred.* After the car reached its destination the defendant retained possession a few days for nonpayment of freight. In an action for alleged negligence in the care of one of the horses after the transportation had ceased, *held:*

### Contract Limiting Time to Claim Damages of Warehouseman.

The above condition as to *notice* was applicable in respect to the carrier's conduct as a warehouseman, that relation being properly *incident* to that of carrier.

### Same—If Reasonable is Valid.

Such a contract, if made by the owner, or if authorized by him, is reasonable and valid.

### Agent—Implied Authority.

From the circumstances it must be inferred that the agent in charge of the property was authorized to make any necessary and reasonable contract, as he did do, for its transportation from Chicago to Lakefield. For that purpose he stood in place of the owner.

Appeal by defendant, the Chicago, Milwaukee & St. Paul Railway Company, from an order of the District Court of Jackson County, *P. E. Brown*, J., denying its motion for a new trial.

The facts in this case are stated in the opinion, and in the former decision, 45 Minn. 85. The second trial was on July 7, 1891.

At the close of the plaintiff's evidence the defendant moved the court to direct a verdict for it, on the ground that there was no proof of any violation of its duty as a common carrier of goods. The plaintiff thereupon stated that he founded his claim solely upon the improper housing and care of the mare after her arrival at Lakefield in this State. The motion was denied. The defendant then offered in evidence the contract made with it for the plaintiff by J. G. Hepler, his agent in care of the property *en route*. This contract provided that no claim for loss or damage to stock should be valid, unless presented to the company in writing, within thirty days after the same occurred. Plaintiff had a verdict for $281.75. Defendant moved for a new trial. This was denied, the court saying: "The plaintiff's sole claim is, that the company was negligent in the care of the mare after its liability as a common carrier had terminated. The contract requiring that notice in writing be given to it within thirty days after a loss, appears to provide for limiting its liability while the property is in transportation, and does not apply to its liability for negligence in performing its duty as a warehouse keeper, after the mare had reached her destination, and had been offered to the consignee. The authority also of Hepler to make this particular contract was, under the evidence, a question of fact for the jury. He was, beyond dispute, plaintiff's agent to care for the mare and contract for her carriage from Chicago to Lakefield, but whether he had authority to make a contract as to the notice, plaintiff should give, after she had been delivered, admits of grave doubt."

*Andrew C. Dunn*, for appellant.

On the arrival at Lakefield, the agent Hepler refused to pay the freight and receive the mare and other property. Thereupon the defendant refused to deliver the same until the freight was paid, and assumed to take charge of the mare and other property until it should be paid. The mare was kept by defendant from the evening of March 16, until the afternoon of March 19, 1889, on which day plaintiff appeared, paid the freight and took possession of his property. The mare died (from a supposed lung fever) on March 22, 1889, while in possession of the plaintiff.

Hepler was plaintiff's agent and had authority to ship the car

from Chicago to Lakefield, and he actually did ship it, and made the contract on behalf of the plaintiff. The authority conferred upon an agent to ship for another, carries with it power and authority to make a reasonable contract to that end, and one which contains stipulations limiting the liability of the carrier. *Squire* v. *New York Cent. R. Co.*, 98 Mass. 239; *Christenson* v. *American Express Co.*, 15 Minn. 270, (Gil. 208;) *Nelson* v. *Hudson River R. Co.*, 48 N. Y. 498. The signing by Hepler under these circumstances was equivalent to plaintiff's signing it himself. *Hutchinson* v. *Chicago, St. P., M. & O. Ry. Co.*, 37 Minn. 524; *Express Co.* v. *Caldwell*, 21 Wall. 264; *Lewis* v. *Great Western Railway Co.*, 5 Hurl. & N. 867; *Southern Express Co.* v. *Hunnicutt*, 54 Miss. 566.

The Judge expressly instructed the jury that if they found from the evidence that Hepler had authority to make this contract on the plaintiff's behalf, then the plaintiff could not recover in this action. So the jury were simply to consider whether or not the contract was the contract of the plaintiff.

*Thomas J. Knox,* for respondent.

The Judge instructed the jury that it was for them to determine under the evidence whether or not the shipping bill taken by Hepler was the contract of the plaintiff. To this instruction, both plaintiff and defendant excepted; the plaintiff upon the ground that under the pleadings and proof, it had no application to the case, the defendant not being charged as a carrier but as warehouseman. The defendant excepted upon the ground that it was the duty of the Judge to instruct the jury that it was the contract of the plaintiff, and that it was error to submit the question to the jury. Hepler was a mere servant of Armstrong, sent along with the stock to take care of it, and such a servant has no authority to contract. *Buckland* v. *Adams Express Co.*, 97 Mass. 124; *Gaines* v. *Union Transportation & Ins. Co.*, 28 Ohio St. 418; *Park* v. *Preston*, 108 N. Y. 434.

The case of *Hutchinson* v. *Chicago, St. P., M. & O. Ry. Co.*, 37 Minn. 524, has no application, and the theory that the bill of lading was the contract under which defendant became possessed of this mare, rests only upon the other theory that Hepler was the

authorized agent of plaintiff to deliver the mare to defendant for shipment. *Irish* v. *Milwaukee & St. P. Ry. Co.*, 19 Minn. 376, (Gil. 323;) *Railroad Co.* v. *Manufacturing Co.*, 16 Wall. 318; *Insurance Co.* v. *Railroad Co.*, 104 U. S. 146; *Railroad Co.* v. *Pratt*, 22 Wall. 123; *Rawson* v. *Holland*, 59 N. Y. 611.

These cases, as well as many others that might be cited, establish the rule that the first carrier is the agent of the shipper for the delivery of the property to the next succeeding carrier. A mere servant, placed in the car for the purpose of taking care of live stock in transit, has no such authority; and where the goods are originally shipped by the owner in person, the fact that such servant is found in the car is not sufficient evidence of his authority to warrant the carrier in procuring his signature to a contract limiting its liability. Whether or not in such case, the person accompanying the stock has power to contract for their carriage, is a question of fact to be determined by the jury. The first carrier who contracts with the shipper is legally bound to transfer the property to the next succeeding carrier, and has power to bind the shipper by any contract within the scope of its own contract with the shipper. Mechem, Agency, §§ 274, 317; *Graves* v. *Horton*, 38 Minn. 66. This alleged contract relates solely to defendant's duty as a common carrier. Its object was to limit defendant's liability as such carrier and not otherwise. . It must be strictly construed, and as the plaintiff's claim is against the defendant as a warehouseman after the termination of the carriage, the contract can have no application.

Contract terms which relate to the transit by way of reducing liability, are not to be extended to negligence or misconduct affecting the goods after arrival. Hutchinson, Carriers, §§ 275, 276, 277, 278; Schouler, Bailments, §§ 510, 516, 520; *Burdwell* v. *American Express Co.*, 35 Minn. 344; *Cream City R. Co.* v. *Chicago, M. & St. P. Ry. Co.*, 63 Wis. 93; *Union Pacific R. Co.* v. *Moyer*, 40 Kan. 184; *Nicholas* v. *New York Cent. & H. R. R. Co.*, 89 N. Y. 370; *Wheeler* v. *Oceanic Steam Nav. Co.*, 125 N. Y. 155; *Tarbell* v. *Royal Exchange Shipping Co.*, 110 N. Y. 170; *Rice* v. *Hart*, 118 Mass. 201; *Gleadell* v. *Thomson*, 56 N. Y. 194.

How far, and to what extent, a common carrier is permitted to limit by contract the time within which claims may be presented for loss or damage, seems to be to some extent unsettled upon the authorities. *Smitha* v. *Louisville & N. R. Co.*, 86 Tenn. 198; *Owen* v. *Louisville & N. Ry. Co.*, 87 Ky. 626; *Southern Express Co.* v. *Caperton*, 44 Ala. 101.

DICKINSON, J.   A former appeal in this action is reported in 45 Minn. 85, (47 N. W. Rep. 459.)   Upon a second trial a verdict was rendered for the plaintiff.   The defendant appeals from an order refusing a new trial.   The nature of the complaint, and the particular ground upon which recovery was sought, are stated in the opinion on the former appeal.   The case, as now before us, involves some questions not before presented.

After the plaintiff had introduced his evidence in chief, he voluntarily elected to rest his right to recover on the alleged negligence of the defendant in respect to the care of the horse after it had reached its destination, at Lakefield.   It appeared that the plaintiff shipped the horse, with some other horses and various kinds of personal property belonging to him, the whole comprising one car load, from Redding, Ill., and that the final destination was Lakefield, in this state.   The transportation was by the Chicago, Santa Fe & California Railroad from Redding to Chicago, and from Chicago to Lakefield it was over this defendant's road.   The plaintiff personally entered into a written or printed contract with the former road for transportation from Redding to Chicago, for which the freight named was $14.   This contract contained a provision for the transportation, with the car, of a person, in behalf of the owner, to take care of the stock.   It contained some provisions in the nature of restrictions upon the liability of the carrier, including one making it a condition precedent to a right of action against the carrier for damages that a claim for damages should be made in writing, within ten days from the time the stock should be removed from the car.   This written contract makes no provision for, or allusion to, a shipment beyond Chicago.

The plaintiff sent a man by the name of Hepler with the car, to take care of the property, from Redding to Lakefield, and gave him money to pay the freight to the latter place.   At Chicago,

when the car was transferred to and shipped over the road of this defendant, Hepler assumed, in behalf of the plaintiff, to enter into a formal contract with the company for the transportation to Lakefield, and which contained this, among other provisions: "*Sixth.* That no claim for loss or damages to stock shall be valid unless presented to the company in writing within thirty days after the same shall have occurred." This contract also recognized Hepler as being in charge of the property, and served as a pass for himself, he not being called upon to pay fare.

When the car reached Lakefield, Hepler had not money enough to pay the freight demanded, and for that reason the defendant refused to let him take the property away, and so it remained in the control of the defendant a few days. It is claimed that the horse contracted lung fever during that time, for want of proper care on the part of the defendant, and the horse died of that disease a few days after it was delivered to the plaintiff.

The authority of Hepler to make a contract containing a limitation like that above recited, and the legal effect of such a contract, if authorized, are the important points in this case.

It is contended on the part of the respondent that the sixth clause of the contract above recited is to be construed as referring only to claims for damages on account of some neglect or fault of the defendant in respect to its duties as *carrier*, as distinguished from those of a warehouseman, after the completion of the transportation, and hence that it is inapplicable to this case. Such a construction cannot be given to the contract under the circumstances here presented. So far as appears, the defendant's retention of the property after it reached its destination was rightful, because of the nonpayment of its charges for freight, which do not appear to have been more than it had a right to demand. The retention was properly *incident* to the contract for transportation, as was considered when the case was here before, and there is no good reason why this sixth provision of the contract should be deemed inapplicable for the protection of the carrier in respect to the ordinary and incidental duties of warehouseman, which rested upon it when its duties as a carrier ceased.

If this is to be taken to have been the contract of the plaintiff, the requirement that written notice of any claim for damages should

be given within thirty days after the same should have occurred was a reasonable provision, not only for the protection of the carrier against fraudulent claims, but to enable it to ascertain the facts upon which any claim for damages might be founded. A common carrier may, by special contract, thus limit its general liability. *Cole* v. *Western Union Tel. Co.,* 33 Minn. 227, (22 N. W. Rep. 385;) *Lewis* v. *Great Western Ry. Co.,* 5 Hurl. & N. 867; *Express Co.* v. *Caldwell,* 21 Wall. 264; *Jennings* v. *Grand Trunk Ry. Co.,* 127 N. Y. 438, 451, (28 N. E. Rep. 394;) *Southern Express Co.* v. *Hunnicutt,* 54 Miss. 566; *United States Express Co.* v. *Harris,* 51 Ind. 127; *Wolf* v. *Western Union Tel. Co.,* 62 Pa. St. 83; *Glenn* v. *Southern Express Co.,* 86 Tenn. 594, (8 S. W. Rep. 152.) The time —thirty days—was reasonable. *Cole* v. *Western Union Tel. Co., supra.*

The court so ruled at the trial, but left it for the jury to determine from the evidence whether Hepler had authority to make the contract for the plaintiff. In view of the instructions of the court, it is apparent that the jury must have found that Hepler had no authority to make such a contract. It seems to us that the legal effect of the evidence was to conclusively show the contrary.

It is true that the evidence showed, or tended to show, that the plaintiff did not expressly authorize Hepler to enter into any contract for transportation, and whatever authority the latter had is only to be inferred from the circumstances of the case, which we have already stated in part. These facts may be said to have been conclusively shown: (1) That the plaintiff shipped the property at Redding for the purpose of having it transported by way of Chicago to Lakefield, in this state; (2) that he sent the man Hepler with the car, and in charge of the property, who was to go through with it to its destination, and gave to him the money to pay the freight; and (3) that the plaintiff did not personally contract for transportation beyond Chicago, the terminus of the road on which the property was shipped, and with which road, only, did he personally make any contract. Such being the case, the agent thus placed in charge of the property will be deemed to have had im-

plied authority to make such contract at Chicago for the continued transportation as was necessary and reasonable. For that purpose he represented the owner, and was the only person with whom the carrier from Chicago to Lakefield (this defendant) could deal or contract. *Squire* v. *New-York Cent. R. Co.*, 98 Mass. 239; *Hill* v. *Boston, H. T. & W. R. Co.*, 144 Mass. 284, (10 N. E. Rep. 836;) *Aldridge* v. *Great Western Ry. Co.*, 15 C. B. (N. S.) 582, 599; *Nelson* v. *Hudson River R. Co.*, 48 N. Y. 498; *York Co.* v. *Central Railroad*, 3 Wall. 107; Hutch. Carr. (2d Ed.) §§ 265, 266. See, also, *Rawson* v. *Holland*, 59 N. Y. 611; *Christenson* v. *American Express Co.*, 15 Minn. 270, (Gil. 208.) The case of *Squire* v. *New-York Cent. R. Co., supra*, was very similar to that under consideration.

We have said that the plaintiff did not personally contract for the transportation beyond Chicago, although it does appear from his testimony that he agreed with the company on whose road he shipped the property for a through rate of $50 for the car. His formal contract with that company, signed by him and by the company's agent, was only for transportation to Chicago for the agreed price of $14. It makes no reference to forwarding or to transportation beyond that place; and the plaintiff testified that he "contracted with the Santa Fe line to Chicago, and then he [Hepler] had to ship it over the Milwaukee to Lakefield." The bare agreement of the plaintiff with the first carrier as to the freight to be paid to the point of destination, considered in connection with the formal contract for transportation to Chicago only, the terminus of that carrier's line, cannot be regarded as being a complete contract made by the plaintiff for the transportation to the ultimate destination, so as to exclude the inference that the agent sent by him in charge of the property had authority to contract with connecting carriers beyond Chicago. *Lamb* v. *Camden & Amboy R. & T. Co.*, 46 N. Y. 271; *Camden & Amboy R. Co.* v. *Forsyth*, 61 Pa. St. 81; *Converse* v. *Norwich Transportation Co.*, 33 Conn. 166; *Collins* v. *Bristol & E. Ry. Co.*, 38 Eng. Law & Eq. 593.

No notice was given of the plaintiff's claim, in accordance with this provision of the contract, nor was the failure to give notice in any way excused.

For the reasons here stated, we are of the opinion that the case did not justify submitting to the jury the question as to Hepler's authority, and that the verdict cannot be sustained.

Order reversed.

VANDERBURGH, J., being necessarily absent, took no part in this decision.

(Opinion published 54 N. W. Rep. 1059.)