BOWERS et al. v. ATLANTIC, G. & P. CO. et al.

(Circuit Court, S. D. New York. November 22, 1900.)

1. PATENTS—SUITS FOR INFRINGEMENT—DISTRICT OF SUIT.

The purpose of Act March 3, 1897 (29 Stat. 695), which provides that in suits for infringement of patents the circuit courts shall have jurisdiction "in the district of which the defendant is an inhabitant or in any district in which the defendant * * * shall have committed acts of infringement and have a regular and established place of business," was not to

enlarge, but to restrict, the jurisdiction in such cases, and since its passage a suit for infringement can be brought only in one of the districts enumerated therein.

**2. SAME—LIABILITY FOR INFRINGEMENT—OFFICER OF CORPORATION.**
   A suit for infringement cannot be maintained against an individual who is not alleged to have infringed, except in his official capacity as an officer of a corporation charged to have committed the infringement, and which is not shown to be insolvent.

In Equity. Suit for infringement of patents. On pleas filed by each of the defendants separately, denying the jurisdiction of the court.

John H. Miller and Howard R. Bayne, for complainants.
Edwin H. Brown, for defendants.

COXE, District Judge. The complainants, who are citizens, respectively, of California and Illinois, file their bill in the usual form charging the defendants with infringement of complainants' patents for improvements in dredging machines. The pleas were set down for argument by the complainants, the facts admitted being as follows: First. The Atlantic, Gulf and Pacific Company is a West Virginia corporation and an inhabitant of that state. Second. The said corporation has a regular and established place of business in this district. Third. The said corporation has never infringed in this district, the infringement complained of having occurred at Savannah in the state of Georgia. Fourth. The defendant Catt is the president of the said corporation and for eight years has resided in the Eastern district of New York. The defendant Wood is the corporation's secretary and treasurer and resides in this district. Fifth. The action was commenced July 10, 1900. As to the corporation, then, the question is whether or not the suit can be maintained upon the sole ground that the defendant has a place of business in the city of New York or is found there. In other words, can a West Virginia corporation be sued in the Southern district of New York for an infringement committed in Georgia?

The act of March 3, 1897 (29 Stat. 695), is as follows:

"Chap. 395. An act defining the jurisdiction of the United States circuit courts in cases brought for the infringement of letters patent.

"Be it enacted by the senate and house of representatives of the United States of America in congress assembled, that in suits brought for the infringement of letters patent the circuit courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership, or corporation, shall have committed acts of infringement and have a regular and established place of business. If such suit is brought in a district of which the defendant is not an inhabitant, but in which such defendant has a regular and established place of business, service of process, summons, or subpœna upon the defendant may be made by service upon the agent or agents engaged in conducting such business in the district in which suit is brought. Approved, March 3, 1897."

This is the latest legislative deliverance upon the subject, and there can be no question that under its provisions, considered alone, the only districts where the court has jurisdiction are, first, the district of which the defendant is an inhabitant, and, second, the

district where the defendant infringes and has a regular place of business. If, then, there were no other provision of law, it is manifest that this action could not be maintained in this district, and could only be maintained either in the district of West Virginia or in the Southern district of Georgia, provided the defendant has a regular place of business there. The law says, if a corporation be sued outside the district of which it is an inhabitant, that it must be in a district where there is infringement and a regular place of business. Infringement alone will not give jurisdiction, a regular place of business alone will not give jurisdiction, both must concur. This is the law of 1897. But it is argued that the law must be interpreted in the light of existing and pre-existing statutes, and as so construed it does not restrict but enlarges the jurisdiction of the court,—providing an additional place where the defendant may be sued, namely, the district where he infringes and has an established place of business. If this be the proper construction of the act an infringement suit may be brought first, in the district of which the defendant is an inhabitant; second, in the district where he is found; and, third, in the district where infringement occurs and where the defendant has an established place of business. A defendant residing in Maine and having a place of business and infringing at Boston could, under this construction, be sued in Maine, in Massachusetts, or, if he happened to be in Texas, or Oregon, he could be sued there. On the other hand, if the defendants' construction be correct, such a defendant could be sued only in Maine, where he lives, or in Massachusetts, where he transacts business and infringes. Prior to March 3, 1887, the courts of the United States had almost unlimited jurisdiction, and could hold a defendant in any district where he chanced to be and was served with process. The abuses which this condition of affairs permitted were many and serious, and it was largely to correct them that the act of 1887–88 was passed. That act has always been regarded as a restrictive measure. That it limited the jurisdiction of the federal courts in several important particulars is beyond dispute. Shaw v. Mining Co., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768; Machine Co. v. Walthers, 134 U. S. 41, 10 Sup. Ct. 485, 33 L. Ed. 833; Manufacturing Co. v. Watson (C. C.) 74 Fed. 418. The purpose of the act being to narrow the federal jurisdiction, it may well be inferred that congress intended to limit it as to all classes of actions, infringement suits included, for in no branch were complaints of injustice and oppression more numerous. In this congress failed. In the Hohorst Case, 150 U. S. 653, 14 Sup. Ct. 221, 37 L. Ed. 1211, the supreme court decided, in December, 1893, "that the provision of the existing statute, which prohibits suit to be brought against any person 'in any other district than that whereof he is an inhabitant,' is inapplicable to an alien or a foreign corporation sued here, and especially to a suit for the infringement of a patent right; and that, consequently, such a person or corporation may be sued by a citizen of a state of the Union in any district in which valid service can be made upon the defendant." The circuit courts quite generally accepted this decision as holding, by implication, that the

provision quoted from the act of 1887 was applicable to all defendants except aliens and corporations of foreign countries. The courts still declined, in numerous instances, to assume jurisdiction in infringement suits where the defendant was a citizen of the United States and was sued in a district of which he was not an inhabitant. Union Switch & Signal Co. v. Hall Signal Co. (C. C.) 65 Fed. 625; Donnelly v. Cordage Co. (C. C.) 66 Fed. 613. Although it was decided in Smith v. Manufacturing Co. (C. C.) 67 Fed. 801, that the Hohorst Case was applicable to all infringement suits, the contrary doctrine was followed thereafter in this district in at least two unreported cases. Button Works v. Wade (C. C.) 72 Fed. 298.

This was the situation when, in December, 1895, the case of In re Keasbey & Mattison Co., 160 U. S. 221, 16 Sup. Ct. 273, 40 L. Ed. 402, was decided. Although that case arose under the act of March 3, 1881, and related to the infringement of a trade-mark, the court took occasion to comment upon and restate its decision in the Hohorst Case in language so plain that the circuit courts were no longer in doubt as to the scope of the decision. The court says (page 230, 160 U. S., page 275, 16 Sup. Ct., and page 405, 40 L. Ed.):

"It was a suit for infringement of a patent right, exclusive jurisdiction of which had been granted to the circuit courts of the United States by section 629, cl. 9, and section 711, cl. 5, of the Revised Statutes, re-enacting earlier acts of congress; and was therefore not affected by general provisions regulating the jurisdiction of the courts of the United States, concurrent with that of the several states."

The circuit courts accepted this statement as a definitive settlement of the vexed question, and thereafter it was held that the act of 1887 did not affect infringement suits and that the jurisdiction was as broad as it had been before the passage of that act. Van Patten v. Railroad Co. (C. C.) 74 Fed. 981, 989; Earl v. Southern Pac. Co. (C. C.) 75 Fed. 609, affirmed in 27 C. C. A. 185, 82 Fed. 690; Button Works v. Wade, supra; Westinghouse Air-Brake Co. v. Great Northern R. Co. (C. C.) 84 Fed. 9. Accordingly any district where the defendant happened to be served, no matter how distant from his home or the place of infringement, was a proper one in which to begin the action.

This was the situation when the act of March, 1897, was passed,— 15 months after the decision in Re Keasbey & Mattison Co. The court is unable to discover anything in the circumstances leading up to the passage of this act to aid the contention of the complainants that it broadened the jurisdiction of the circuit courts in patent causes. The reasons for this conclusion, briefly stated, are as follows: First. The jurisdiction did not need to be broadened; it was as broad as it had ever been since the creation of the government. It was limited only by the national sovereignty. There was not a foot of ground within the limits of the United States where an infringer was safe from process. Second. There was no demand for a more extended jurisdiction; on the contrary, the demand was that the jurisdiction should be limited so that all suits should stand upon an equal footing. Many thoughtful minds conceived it to be

an injustice that, whereas, defendants in other actions were given immunity from suit, when absent from their domiciles, defendants in patent suits could be attacked in districts where defense was difficult if not impossible. Third. The last previous expression of legislative intent was in favor of a restricted jurisdiction. So long as the courts decided that this jurisdiction applied to patent causes congress remained silent. If the lawmakers were dissatisfied with the construction of the act of 1887 by the circuit courts that it was applicable to patent suits it would seem that then was the time for a new act broadening the jurisdiction. In other words, while the courts were restricting the jurisdiction congress remained silent and acted only after the supreme court had finally decided that the act of 1887 had no application to patent suits. This inaction and action on the part of congress seem absolutely inconsistent with a legislative intent to give a wider jurisdiction in patent cases, but perfectly consistent with a purpose to narrow it. Fourth. The inference is justifiable that the act of 1897 was the reply of congress to the decision of the Keasbey Case. Not until then was the question finally disposed of. It was disposed of contrary to the legislative view so far as it may be inferred from the act of 1887. If congress were in accord with the Keasbey decision no legislation was necessary; if otherwise the act of 1897 was the logical outcome. It seems well-nigh incredible that, after the decision of the supreme court, congress should have deemed an act necessary to broaden still further the jurisdiction in patent cases. Such an act could have no raison d'être. An act limiting the jurisdiction was to be expected, and any doubtful phraseology must be solved in the light of what, in the circumstances, appears to have been the obvious purpose of congress.

Turning, now, to the act itself it will be seen that there is nothing therein to support the complainants' contention. It is an act limited to patent causes and "defining" the jurisdiction therein, its aim being to set at rest disputes which might thereafter arise regarding that jurisdiction. It provides that in suits brought after March 3, 1897, the circuit courts shall have jurisdiction in the district "of which the defendant is an inhabitant." Thus the act of 1887 is made applicable to patent causes. Had congress intended to make the act of 1875 also applicable it would have added the words "or in which he shall be found." The omission of these words is wholly incompatible with the theory that the jurisdiction is broader after the passage of the act than it was before. After placing patent suits on a par with other suits the act proceeds to make an exception in their favor by permitting the owner of a patent to sue in a district where the defendant is systematically committing acts of infringement. There is no hardship to the infringer if called upon to answer where he is actually established in business. On the other hand, it is but justice to the owner of the patent that he is permitted to seek redress in the district where the wrong is done. The act of 1897 is in the nature of a compromise between the act of 1875 and the act of 1887; the former was too broad; the latter is too narrow. By adding to the district of in-

habitance the district of infringement congress has made an exception in the case of patent suits which gives them every advantage over other suits to which the owners of patents are fairly entitled. If the intention of congress were, as complainants contend, to add one more district to the domain of jurisdiction, the act would hardly have been passed in its present form. The language is most inapt to express such a purpose. An act intended to give a broader jurisdiction would not have presented the strange anomaly, after reciting a provision of existing law limiting jurisdiction to the district of inhabitance, of omitting another provision of existing law upon which the widest jurisdiction had been based. In short, had the legislative purpose been, as the complainants assert, there would, in all probability, have been a brief enactment to the effect that, in infringement suits the circuit courts, in addition to the jurisdiction allowed by law, shall have jurisdiction in the district where the defendant infringes and has a regular place of business. The court is clearly of the opinion that under the act of 1897 patent suits can be brought only in the district of which the defendant is an inhabitant, or in the district where he infringes and has a regular and established place of business. Such a construction places all suits upon substantially a common plane and makes a consistent and harmonious body of law. Comparatively few decisions construing this act have been reported, but all that the court has been able to find are, it is thought, in harmony with this view. In Westinghouse Air-Brake Co. v. Great Northern R. Co., 31 C. C. A. 525, 88 Fed. 258, the court, in speaking of the act of 1897, says:

"The object was to determine with precision the boundaries of jurisdiction and to create a future method of service in patent causes against nonresident defendants, which had not theretofore been stated in a federal statute."

The court has not attempted to discuss the various objections interposed to the form of the pleas for the reason that it is understood that it was agreed at the argument that the question of jurisdiction should be determined at this time upon the undisputed facts. The court is fully in accord with this view, and even were there doubt in the mind of the court it would still seem that the parties should not be subjected to the hardship and expense of taking the proofs with this question undetermined. So far as the pleas have been examined they are believed to be free from the complainants' criticisms, but were this otherwise it would subserve no useful purpose to sustain objections to the pleas which relate to matters of form. The question of jurisdiction must be met, and it is for the interest of all that it be decided in limine.

The plea of the defendant Wood presents a different question. He is an inhabitant of this district, but has never infringed the complainants' patents as an individual, and has done nothing in the matter except in his official capacity as secretary and treasurer of the corporation defendant. There is no pretense that the corporation is financially irresponsible or that a decree against it will not give adequate relief. It is hardly probable that complainants will care to retain the suit here against the defendant Wood alone,

but in any event the weight of authority is to the effect that the action cannot, in these circumstances, be maintained against him. Ambler v. Choteau, 107 U. S. 586, 1 Sup. Ct. 556, 27 L. Ed. 322; Rowbotham v. Iron Co. (C. C.) 71 Fed. 758; Linotype Co. v. Ridder (C. C.) 65 Fed. 853; Howard v. Plow Works (C. C.) 35 Fed. 743. The pleas are sustained.