### SMITH v. FARBENFABRIKEN OF ELBERFELD CO.

(Circuit Court of Appeals, Sixth Circuit.   March 4, 1913.)

No. 2,320.

1. COURTS (§ 405*)—CIRCUIT COURT OF APPEALS—JURISDICTION.

If the trial court decided and the assignments of error raise an independent question of general law, as well as one of jurisdiction, the Circuit Court of Appeals has jurisdiction to determine both questions.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1103; Dec. Dig. § 405.*

Jurisdiction of Circuit Court of Appeals in general, see notes to Lau Ow Bew v. United States, 1 C. C. A. 6; United States Freehold Land & Emigration Co. v. Gallegos, 32 C. C. A. 475.]

2. PATENTS (§ 297*)—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

Where a patent has been sustained in a number of contested cases, its validity should be assumed by another court for the purposes of a motion for a preliminary injunction.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 481–488; Dec. Dig. § 297.*]

3. PATENTS (§ 288*)—SUIT FOR INFRINGEMENT—JURISDICTION—"REGULAR AND ESTABLISHED PLACE OF BUSINESS"—"AGENT ENGAGED IN CONDUCTING SUCH BUSINESS."

Defendant conducted a mail order drug business. He resided in Windsor, Canada, from which place he solicited orders in the United States, and he there received orders and remittances in payment therefor, but all of his goods were kept in a warehouse in Detroit, Michigan, to which place he imported goods in bond and there paid the duties. Such warehouse was in charge of an employé who received and stored and cared for all goods, and on instructions from defendant filled all

orders and made all shipments. *Held*, that defendant had "a regular and established place of business" in Detroit, and that his employé there in charge was his "agent engaged in conducting such business" within the meaning of Judicial Code Act March 3, 1911, c. 231, § 48, 36 Stat. 1100 (U. S. Comp. St. Supp. 1911, p. 149) ; that, where he sold and had shipped from his warehouse articles alleged to infringe a patent, he was subject to suit for infringement in that district under said section by service on such agent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 460–466; Dec. Dig. § 288.*]

**4.** PATENTS (§ 288*)—SUIT FOR INFRINGEMENT—JURISDICTION—SUIT AGAINST NONRESIDENT ALIEN.

Since Judicial Code (Act March 3, 1911, c. 231) § 48, 36 Stat. 1100 (U. S. Comp. St. Supp. 1911, p. 149), vests jurisdiction of patent infringement suits in the District Court in any district wherein a defendant shall have committed such acts of infringement and have a regular and established place of business, and also, where defendant is not an inhabitant of the district, authorizes service on his agent engaged in conducting such business, the court has jurisdiction of such a suit, although the defendant is a nonresident alien.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 460–466; Dec. Dig. § 288.*

Jurisdiction of federal courts in suits relating to patents, see note to Bailey v. Mosher, 11 C. C. A. 313.]

Appeal from the District Court of the United States for the Eastern District of Michigan; Alexis C. Angell, Judge.

Suit in equity by the Farbenfabriken of Elberfeld Company against Albert C. Smith. From an order granting a preliminary injunction, defendant appeals. Affirmed.

See, also, 197 Fed. 894.

H. C. Walters and A. P. Hicks, both of Detroit, Mich., for appellant.

Anthony Gref and Livingston Gifford, both of New York City, for appellee.

Before WARRINGTON, KNAPPEN and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. This is an appeal from an order of the District Court temporarily enjoining appellant (defendant below) from infringing United States letters patent No. 644,077. The patent was granted February 27, 1900, to appellee (complainant below) as assignee of Felix Hoffman, for an improvement made by him in acetyl salicylic acid, known in pharmacy as "aspirin." The bill is in ordinary form, except that it contains averments that in a suit in equity for infringement of such letters patent, brought by the present appellee against Edward A. Kuehmsted in the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois, and heard finally on testimony taken by both parties and arguments of their respective counsel, a decree was entered sustaining the patent and ordering an injunction and an accounting (171 Fed. 887) ; that this decree was affirmed and rehearing denied (179 Fed. 701, 103 C. C. A. 243, C. C. A. 7th Cir.) ; and that a petition for a writ of certiorari was

thereafter denied by the Supreme Court (Kuehmsted, Petitioner, v. Farbenfabriken of Elberfeld Co., 220 U. S. 622, 31 Sup. Ct. 724, 55 L. Ed. 613). It is further averred in the bill that decrees had been entered in certain of the Circuit Courts of the United States enjoining defendants in various suits (23 in number) brought by the present appellee to restrain infringing such letters patent, and that preliminary injunctions restraining similar infringements had been granted in five other suits of appellee against defendants named.

Appellant appeared specially in this case, moved to quash the service of the subpœna, and filed two affidavits in support of the motion and in opposition to the granting of the temporary injunction. It is stated in this motion that the service of the subpœna is defective, and the return of the marshal is untrue, because (a) the person named in the return of service was not, at the date of service, and never had been, "an agent of the defendant"; (b) such person "was not, and never had been, engaged in conducting the business of the defendant"; (c) defendant (appellant) did not then have "and never has had a regular and established place of business within the Eastern District of Michigan"; (d) defendant (appellant) was not then "and never has been, a resident or an inhabitant of the Eastern District of Michigan, and it does not appear from the service of said subpœna that there was personal service upon him", stating, further, that the motion was "based upon the files, record, and proceedings had in the above-entitled cause, and upon the affidavits of Charles Henri (alleged agent upon whom service was made) and Albert C. Smith (defendant), filed herewith." It is admitted by the affidavit of Henri that on February 9, 1912, the date of the marshal's service, there was handed to Henri "a copy of the subpœna, of the bill of complaint, of the order to show cause why an injunction should not issue, and of the notice of motion for a preliminary injunction, all in the said cause."

[1] No motion or other effort has been made in this court to dismiss the present appeal. While the motion to quash might seem to have presented below only a question of jurisdiction of the trial court, and so to have suggested the taking of a proceeding directly to the Supreme Court instead of this court, yet the lower court did in fact decide an independent question of general law as also the question of jurisdiction. The assignments of error are addressed to both questions; as to the former, challenging the validity of the order granting a preliminary injunction "upon the showing made in the bill of complaint and affidavits made in support thereof." It is settled that in such a case this court has power to hear and decide all the questions. Olds v. Herman H. Hettler Lumber Co., 195 Fed. 9, 11, 115 C. C. A. 91 (C. C. A. 6th Cir.); A. J. Phillips Co. v. Grand Trunk Western Ry. Co., 195 Fed. 12, 15, 115 C. C. A. 94 (C. C. A. 6th Cir.).

[2] The matter of general law so decided involved the validity of the patent, and the question whether or not it had been infringed by appellant. In view of the undenied averments of the bill, before pointed out, to the effect that the patent in suit had been adjudged valid upon final hearing, and that repeated orders of injunction had been made upon the faith of such adjudication, the law is too well established to justify discussion of the merits of the order allowing the preliminary

injunction. For the purposes of this appeal we hold that the patent is valid, and that appellant infringed. Acme Acetylene A. Co. v. Commercial Acetylene Co., 192 Fed. 321, 323, 325, 112 C. C. A. 573 (C. C. A. 6th Cir.), and decisions there cited.

[3] It is contended that the court's jurisdiction is dependent upon section 48 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1100 [U. S. Comp. St. Supp. 1911, p. 149]), which is set out in the margin;[1] and that appellant has no "regular and established place of business" in the Eastern District of Michigan, and no agent conducting such business as appellant has within the meaning of section 48. The important facts bearing upon the motion to quash may be summarized thus: As many as 12 years prior to the commencement of this suit the appellant moved from Cleveland, Ohio, to Windsor, Canada, and since then has been engaged in a mail order drug business. He solicits orders from his residence in Windsor, and receives them with remittances at the same place. His customers seem to be in the United States. He imports his goods in bond by way of eastern ports of the United States directly to Detroit, where the duties are paid. He maintains a warehouse on Woodward avenue in the city of Detroit, where his goods are stored, but does not himself visit Detroit. The warehouse and the goods stored there are in the immediate charge of Henri, upon whom the service of process in this suit was made. The appellant notifies his customers:

"All orders filled promptly and completely from my Detroit warehouse, duty paid."

Henri receives shipping instructions, and also tags and labels, from appellant at Windsor, but just what instructions are given and how communicated do not appear. Henri is the only representative of appellant, and the Detroit warehouse is the only warehouse or place for storage and handling of appellant's goods, in the state of Michigan. Upon receiving instructions from appellant, Henri fills the orders of customers by "putting up, wrapping and attending to the shipping of packages," by attaching "shipping tags and labels," and by delivering the packages "at the post office, the express office, or to the express drivers, or at a freight depot." It is manifest that Henri must also receive the goods when they reach Detroit in bond, and then place them in the warehouse preparatory to breaking, assorting and storing them for the purpose of conveniently filling and executing sales orders. He does not receive orders directly from customers or enter into contracts with them, or receive any money in payment of bills;

---

[1] "Sec. 48. In suits brought for the infringement of letters patent, the district courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership, or corporation, shall have committed acts of infringement and have a regular and established place of business. If such suit is brought in a district of which the defendant is not an inhabitant, but in which such defendant has a regular and established place of business, service of process, summons, or subpœna upon the defendant may be made by service upon the agent or agents engaged in conducting such business in the district in which suit is brought."

and both Henri and appellant in terms state in their affidavits that Henri has no authority so to do.

Thus negotiations and acts leading up to, though not completing, the purchases and sales of appellant's goods, are conducted and performed by appellant; but plainly there are a number of other steps to be taken in order to consummate the transactions so begun by appellant individually. Whether goods received in bond are in kind, quality, or condition according to the terms of purchase must, by reason of appellant's failure to enter Detroit, be ascertained and tested by Henri. Kindred facts must also be determined by Henri as respects sales to customers. The performance of such duties as these necessarily involves an important part of appellant's business. Appellant's individual acts do not embrace delivery of the goods (Norfolk & West. Ry. Co. v. Sims, 191 U. S. 447, 24 Sup. Ct. 151, 48 L. Ed. 254; Wheelhouse v. Parr, 141 Mass. 595, 6 N. E. 787; Sarbecker v. State, 65 Wis. 174, 26 N. W. 541, 56 Am. Rep. 624); nor does it affirmatively appear that he selects the carrier where there are two or more reaching any given destination, or fixes the cost of carriage in any case; and, in the absence of such showing, Henri is obviously clothed with implied authority to select the carrier in the one instance, and stipulate for the terms of transportation in the other (Nelson v. H. R. R. Co., 48 N. Y. 504; The St. Hubert [D. C.] 102 Fed. 364; Armstrong v. Chicago, M. & St. P. Ry. Co., 53 Minn. 189, 190, 54 N. W. 1059; 1 Hutch. Car. [3d Ed.] § 108; 1 Clark & Skyles on Agency, § 286); nor does it appear that appellant has anything to do with the manner of storing, or the method and safety of packing, nor that he limits or regulates the control and management exercised at the warehouse or with respect to the goods while stored there. These features are all committed to Henri, and they necessarily invest him with some degree of authority and discretion as an agent, and not merely as a servant. Indeed, Henri's duties and work cover the entire portion of appellant's business that is carried on in the Eastern federal district of Michigan; and since they comprise the last essential acts of performance of appellant's contracts, they operate to fix the place of performance at Detroit. Johnson v. Chas. D. Norton Co., 159 Fed. 363, 86 C. C. A. 361 (C. C. A. 6th Cir.); Bond v. John V. Farwell Co., 172 Fed. 64, 96 C. C. A. 546 (C. C. A. 6th Cir.); Shaw v. Goebel Brewing Co., 202 Fed. 408, decided by this court January 7, 1913.

It results that sales of the infringing goods are consummated either in Detroit or through the mail or other carriers there which reach the points of destination. The law applicable to such sales would ordinarily be that of Michigan (see decisions last cited), except, of course, in cases like this where the federal enactments apply. If what is done at the warehouse at Detroit, and in that city, looking to the delivery of the goods, were subtracted from what is done in Windsor, appellant could not conduct his present business at all. We need not repeat that he has no other warehouse, no other representative, and no stock of goods through which to conduct business, except only at the Woodward avenue warehouse in Detroit. Now, despite the fact that the preliminary steps are taken at Windsor, it is plain enough that the final and essential acts of infringement in issue are committed by Henri

at the warehouse in Detroit, and through his dealings with the carriers at the warehouse and elsewhere within that city. Henri thus does something with respect to the business upon which the suit is founded. Henri is there in the right of appellant, and Henri's acts are appellant's acts; and to say that appellant has "no regular and established place of business" there is to ignore the use that has been made for years of the Woodward avenue warehouse. This we think presents a situation similar to one recently described in St. Louis Southwestern Ry. v. Alexander, 227 U. S. 218, 33 Sup. Ct. 245, 57 L. Ed. ——, decided by the Supreme Court February 3, 1913. The object of that suit was to recover damages for loss sustained by Alexander through alleged negligence of the railway company for failing properly to ice and to re-ice certain poultry shipped from Waco, Tex., to New York City. Suit was brought in the Southern District of New York. No part of the railroad was within that state; and the presence of the company through an agency maintained there or business done there was not relatively, we think, as material as was the presence of appellant through Henri and the business done by him in Detroit. Mr. Justice Day, in summing up, said:

"In this situation we think this was the transaction of business in behalf of the company by its authorized agent in such manner as to bring it within the district of New York, in which it was sued and to make it subject to service of process there."

See, also, Mutual Life Insurance Co. v. Spratley, 172 U. S. 602, 611, 19 Sup. Ct. 308, 43 L. Ed. 569; Lumbermen's Ins. Co. v. Meyer, 197 U. S. 407, 415, 25 Sup. Ct. 483, 49 L. Ed. 810; Houston v. Filer & Stowell Co. (C. C.) 85 Fed. 757, 758; American Steel & Wire Co. v. Speed, 110 Tenn. 524, 539, 75 S. W. 1037, 100 Am. St. Rep. 814; Lee v. Fidelity Storage & Transfer Co., 51 Wash. 208, 98 Pac. 658, 659; Premo Specialty Co. v. Jersey-Creme Co., 200 Fed. 352 (C. C. A. 9th Cir.). It is true that these decisions all relate to corporations and their representatives; and it is urged that substituted service like that authorized here cannot be made upon an agent of an absent or nonresident natural person. This contention is not tenable. Andonique v. Carmen, 151 Ky. 249, 151 S. W. 921; Rauber v. Whitney, 125 Ind. 216, 219, 25 N. E. 186. Indeed, section 48 of the Judicial Code expressly authorizes substituted service upon an agent engaged in conducting his principal's business in the district in which suit is brought, whether such principal be "a person, partnership or corporation." This case is not like that of Pennoyer v. Neff, 95 U. S. 714, at page 735 (24 L. Ed. 565), where a personal judgment was held to be without validity, which had been rendered by a state court in an action upon a money demand against a nonresident of the state, who was served only by publication of summons, no personal service of process being made, and the defendant not appearing. In that case, however, Justice Field expressly recognized the right of a state to "require a nonresident entering into a partnership or association within its limits, or making contracts enforceable there, to appoint an agent to receive service of process." There can be no difference in principle between that mode of securing service and the one prescribed by section 48.

203 F.—31

[4] It is in substance urged that aliens are not within the purview of section 48. This action was commenced February 9, 1912; and the Judicial Code was approved March 3, 1911, and became effective January 1, 1912. It is therefore not necessary to trace the history of the earlier pertinent acts of Congress. See Bowers v. Atlantic G. & P. Co. (C. C.) 104 Fed. 887, and Westinghouse Electric & Mfg. Co. v. Stanley Electric Mfg. Co. (C. C.) 116 Fed. 641, as to origin and consequent purpose of section 48. It is enough to state that by the first paragraph of section 24 the District Courts are given jurisdiction of suits of a civil nature, at common law or in equity, between citizens of a state and citizens or subjects of a foreign state; and by the seventh paragraph of all suits at law or in equity arising under "the patent, the copyright and the trade-mark laws." If we assume, although it is not shown, that appellant is an alien, it is difficult to see why section 48, before quoted, should not be considered as applicable to an alien. Chapters 2, 3, and 4 of the Code treat of parties and subjects-matter within the jurisdiction of the District Courts, and also of the places where suits shall be instituted. Obviously the scope and intent of these chapters, their comprehensive character, must be ascertained by considering them as an entirety. When the legislative purpose is so considered, its scope manifestly embraces an alien, as well as a citizen—who maintains through his own agency a regular and established place of business within our territorial limits—quite as certainly as if it were in express terms so stated in every section, including section 48. Paragraph 1 of section 24, c. 2, treats of parties, while paragraph 7 of the same section treats of causes arising under Acts of Congress, like the patent act; and section 48, c. 4, was designed to fix the districts in which suits for infringement of letters patent should be brought. Judge Coxe said, and rightly we think, of Act 1897, c. 395, 29 Stat. 695 (U. S. Comp. St. 1901, p. 589), now section 48, that "patent suits can be brought only in the district of which the defendant is an inhabitant, or in the district where he infringes and has a regular and established place of business" (Bowers v. Atlantic G. & P. Co., supra [C. C.] 104 Fed., at page 892); and, where these conditions are brought about by a nonresident alien, we are disposed to hold that he should be regarded as having intended to subject the consequences of such acts as are committed in the prosecution of such business,.through such agency, to the law of the place where the business is carried on, and so is chargeable with having consented to answer to process there served upon his agent (Feyerick and Others v. Hubbard, 71 L. J. [1902] 509, 511; Bank of Australasia v. Harding, 9 C. B. 662, 686. See, also, Copin v. Adamson, 9 Exch. 345, 349; Bank of Australasia v. Nias, 16 A. & E. 717, 733; Shaw v. Goebel Brewing Co., supra); for otherwise a nonresident, absent alien could with immunity from suit maintain such a place of business with such an agency in any federal district of this country for the very purpose of infringing patents, and at the same time secure all additional advantage that is accorded to resident citizens, in short, such alien infringers would enjoy greater privileges and protection than are claimed in respect of resident citizens of any of the states of this country. Such a construction as this will

never be given to the patent laws of the United States, unless plain and express words are found in them to indicate that such was the intent of Congress; and such an intent is not predicable of the language found in the jurisdictional chapters before referred to.    Brown v. Duchesne, 60 U. S. (19 How.) 194, 195, 15 L. Ed. 595.    See, also, In re Hohorst, Petitioner, 150 U. S. 653, 662, 14 Sup. Ct. 221, 37 L. Ed. 1211, in connection with In re Keasbey & Mattison Co., Petitioners, 160 U. S. 221, 229, 16 Sup. Ct. 273, 40 L. Ed. 402.

Furthermore, since the jurisdiction of the District Courts in patent infringement cases is founded upon an act of Congress, the important token of such jurisdiction is not, in any respect, the character of the parties, but it is the nature of the case, and it ought to follow that, if the conditions existing in any federal district warrant the exercise of jurisdiction by reason of the nature of the case, the fact that an absent alien had created such conditions is of no more significance than if a nonresident native had created them; in short, the status of the parties is simply incidental, and in no wise controlling.    As Chief Justice Marshall said nearly a century ago in Cohens v. Virginia, 19 U. S. (6 Wheat.) star pages 390 to 394 (5 L. Ed. 257), when speaking of the nature of causes and the character of parties involved in suits calling respectively for the exercise of original or of appellate jurisdiction:

"In one description of cases the jurisdiction of the court is founded entirely on the character of the parties; and the nature of the controversy is not contemplated by the Constitution—the character of the parties is everything, the nature of the case nothing. In the other description of cases, the jurisdiction is founded entirely on the character of the case, and the parties are not contemplated by the Constitution. In these, the nature of the case is everything, the character of the parties nothing. When, then, the Constitution declares the jurisdiction in cases where a state shall be a party to be original, and in all cases arising under the Constitution or a law to be appellate, the conclusion seems irresistible that its framers designed to include in the first class, those cases in which jurisdiction is given, because a state is a party; and to include in the second, those in which jurisdiction is given, because the case arises under the Constitution or a law."

We conclude that the motion to quash was rightly denied, and that the decree below must be affirmed, with costs.