## EUGENE SOL LOUIE v. UNITED STATES. *

(Circuit Court of Appeals, Ninth Circuit.    April 5, 1920.)

No. 3380.

**Courts ⟨⟩405(5)—Circuit Court of Appeals without jurisdiction, where only question is that of lower court's jurisdiction.**

Under Judicial Code, § 238 (Comp. St. § 1215), authorizing appeals and writs of error to be taken direct to the Supreme Court in certain cases, the Circuit Court of Appeals has no jurisdiction to review the judgment of the District Court in a prosecution for homicide, where the only question is whether the District Court had jurisdiction of the crime charged and of defendant's person.

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Eugene Sol Louie was convicted of murder in the second degree, and he brings error.    Writ dismissed.

R. E. McFarland and W. B. McFarland, both of Cœur d'Alene, Idaho, for plaintiff in error.

J. L. McClear, U. S. Atty., and J. R. Smead, Asst. U. S. Atty., both of Boise, Idaho.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Sol Louie brought writ of error to review conviction of murder in the second degree for having killed Adeline Louie, a Cœur d'Alene Indian and a ward of the United States, about May 24, 1919, in Benewah county, Idaho, alleged to be in an Indian country, within the limits of the Cœur d'Alene Indian reservation in Idaho. The indictment is drawn under section 328 of the Penal Code (Comp. St. § 10502), which provides that any and all such Indians committing murder—

"against the person or property of another Indian or other person within the boundaries of any state of the United States, and within the limits of any Indian reservation, shall be subject to the same laws, tried in the same courts and in the same manner, and be subject to the same penalties as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States."

It is alleged that Louie was a Cœur d'Alene Indian, who had theretofore been declared competent by the authorities of the Department of Indian Affairs, and that he was a member of the Cœur d'Alene tribe of Indians, by reason of the fact that he then and there had, in common with all other members of said tribe, an interest in certain tribal funds thereafter to be disbursed to the members of said tribe, including Louie. These facts appeared upon the trial:

Louie was given a patent in fee to certain lands in the Cœur d'Alene Indian reservation. Prior to receiving his patent he had a trust patent upon the land, the United States holding the land in trust for him. Adeline Louie was a ward of the government, and had never been declared competent, and never had received any patent in fee for allotment. The land patented is within the boundaries of the Cœur d'Alene Indian reservation as the limits of such reservation were prior to the time the last cession was made. There are no tribal lands on the Cœur d'Alene reservation, and all lands that had not been allotted were open to settlement on May 2, 1910. At the time of the assault the woman was living on the land that was patented to Louie, but her death occurred upon a lot which had been patented to another person. There were 18,000 acres of land which had never been settled upon and which were included in the cession by the Cœur d'Alene Tribe back to the United States; the Indians having an interest in these lands to the extent that they will get the money to accrue from the sale thereof. The land itself, however, is owned by the United States and is thrown open and platted by white people. What are called Indian lands now consist of the individual allotments in severalty to the members of the tribe and certain townsites on the reservation. By the cession of the 18,000 acres the Indians relinquished their rights to the land, and when the patents are issued they are made direct to the purchasers from the United States.

Louie has had his share of the one distribution already made of the proceeds of sales of part of the 18,000 acres. He lived on the land included in the allotment to him, and had power to rent or sell the land. The patent to Louie was issued under the provisions of the Act of May 8, 1906 (chapter 2348, 34 Stat. 182), amending section 6 of the Act of February 8, 1887. It provides:

That at the expiration of the trust period, and when the lands have been conveyed to the Indian by patent in fee, as provided by section 5 of the act, "then each and every allottee shall have the benefit of and be subject to the laws, both civil and criminal, of the state or territory in which they may reside; and no territory shall pass or enforce any law denying any such Indian within its jurisdiction the equal protection of the law: * * * Provided, that the Secretary of the Interior may, in his discretion, and he is hereby authorized, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed and said land shall not be liable to the satisfaction of any debt contracted prior to the issuing of such patent: Provided further, that until the issuance of fee-simple patents all allottees to whom trust patents shall hereafter be issued shall be subject to the exclusive jurisdiction of the United States: And provided further, that the provisions of this Act shall not extend to any Indians in the Indian Territory." Barnes' Fed. Code, p. 801, § 3598 (Comp. St. § 4203).

Counsel agree in their respective briefs that the only question presented by the record for determination is whether the District Court had jurisdiction of the crime charged and over the person of the defendant below. In our opinion this court has no jurisdiction to review the judgment of the District Court. The question of the construction of that portion of the Act of March 3, 1891 (26 Stat. 826; section 238, Judicial Code [Comp. St. § 1215]), which provides that appeals and writs of error may be taken from the District Court direct to the Supreme Court in any case in which jurisdiction of the court is in issue, has often been considered, and the view which obtains is that, in order that the Circuit Court of Appeals may entertain the writ of error, there must be in the case something more than the question of jurisdiction. This court so held in Excelsior Wooden-Pipe Co. v. Pacific Bridge Co. et al., 109 Fed. 497, 48 C. C. A. 349. See, also, Halpin v. Amerman, 138 Fed. 548, 70 C. C. A. 462; Boston & M. R. Co. v. Gokey, 149 Fed. 42, 79 C. C. A. 64, 9 Ann. Cas. 384; Smith v. Farbenfabriken of Elberfeld Co., 203 Fed. 476, 121 C. C. A. 598; In United States ex rel. Butterworth & Lowe v. Sessions, Judge, 205 Fed. 502, 123 C. C. A. 570, the Court of Appeals for the Sixth Circuit said that, where only a question of jurisdiction of the District Court is involved, the Circuit Court of Appeals has no power, either upon error or appeal, to review the decision of the District Court.

"The remedy lies exclusively in the Supreme Court (Remington v. Central Pacific R. Co., 198 U. S. 95, 97; 25 Sup. Ct. 577, 49 L. Ed. 959; Olds v. Herman H. Hettler Lumber Co., 195 Fed. 9, 11, 115 C. C. A. 91 [C. C. A. 6th Cir.]; Coler v. Grainger County, 74 Fed. 16, 21, 20 C. C. A. 267 [C. C. A. 6th Cir.]; Loveland, App. Jur. § 103, p. 222) ; but if the case should be tried on its merits in the court below, and brought to this court with assignments of error raising an independent question of general law, this court would have power

to hear and determine all the questions (see cases last cited, and A. J. Phillips Co. v. Grand Trunk Western Ry. Co., 195 Fed. 12, 15, 115 C. C. A. 94 [C. C. A. 6th Cir.]; Smith v. Farbenfabriken of Elberfeld Co. [C. C. A.] 203 Fed. 476, 478, 121 C. C. A. 598 [C. C. A. 6th Cir.])."

See Hammond Lumber Co. v. U. S. District Court, 240 Fed. 924, 153 C. C. A. 610; Great Northern R. Co. v. Blaine County, 252 Fed. 548, 164 C. C. A. 464.

The writ must be dismissed for lack of jurisdiction.

ROSS, Circuit Judge (dissenting). I am unable to agree to the judgment dismissing the writ of error for lack of jurisdiction in this court, in view of the fact that the record shows that the first assignment of error is in these words:

"The indictment herein is insufficient, and does not state facts sufficient to constitute or charge any crime against the laws of the United States of America, nor any offense under section 273 of the Penal Code of the United States."

Subsequent assignments of error are to the effect that the court below was without jurisdiction of the person of the defendant or of the crime charged.

In view of the first assignment of error above quoted, I am unable to understand how it can be properly said and held that the plaintiff in error intended by his assignments to raise no other question than the question of jurisdiction of the court below. If the court below did have jurisdiction of the defendant and of the crime charged, would not this court be obliged, in the event it should be of the opinion that the indictment did not state facts sufficient to constitute the alleged crime, to reverse the judgment? It seems to me that there can be but one answer to that. And because it is manifest from a reading of the indictment that it does state facts sufficient to constitute the alleged crime, is that any legal or just reason why the courts should hold that the plaintiff in error did not intend by his assignment to present the question of the sufficiency of the indictment? In my opinion, surely not.

I therefore think it clear that the record brought here presents both the question of the sufficiency of the indictment and of the jurisdiction of the court below. And being of the further opinion that the court below was without jurisdiction, I think the judgment should be reversed and the case remanded, with directions to dismiss the indictment.

The Act of Congress of May 8, 1906 (34 Stat. 182), under which the plaintiff in error was alloted and received a patent in fee for his piece of land, expressly declares that each and every such allottee shall have the benefit of and be subject to the laws, both civil and criminal, of the state or territory in which he may reside, and that the purpose of such provision was to thereafter exclude such an allottee from the operation of the criminal laws of the United States seems to be emphasized by the proviso to section 6 of the same act, in which proviso it is expressly declared that until the issuance of such fee-simple patents all allottees for whom a trust patent should

thereafter be issued shall be subject to the exclusive jurisdiction of the United States. In the Celestine Case, 215 U. S. 278, 30 Sup. Ct. 93, 54 L. Ed. 195, there was not in the statute there involved, as there is in the one here involved, as will be seen near the conclusion of the court's opinion (215 U. S. on page 291, 30 Sup. Ct. on page 97, 54 L. Ed. 195):

"A subjection of the individual Indian to the laws, both civil and criminal, of the state: no grant to him of the benefit of those laws; no denial of the personal jurisdiction of the United States."